IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| iGPS COMPANY LLC,[1] | ) Case No. 13-11459 (     ) |
| Debtor. | ) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO (A) MAINTAIN INSURANCE PROGRAM, (B) PAY INSURANCE PREMIUMS IN THE ORDINARY COURSE AND (C) PAY ALL OBLIGATIONS ASSOCIATED THEREWITH; AND (II) PREVENTING INSURANCE COMPANIES FROM GIVING ANY NOTICE OF TERMINATION OR OTHERWISE MODIFYING ANY INSURANCE POLICY WITHOUT OBTAINING RELIEF FROM THE AUTOMATIC STAY**

iGPS Company LLC, as the debtor and debtor in possession in the above-captioned chapter 11 case ("iGPS" or the "Debtor"), files this motion pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and the UST Guidelines (defined below) for entry of an order (i) authorizing the Debtor to (a) maintain insurance coverage levels required under its corporate risk program, including authority to revise, extend, supplement, renew or change insurance coverage as needed, (b) pay insurance premiums in the ordinary course of business, and (c) pay any prepetition and postpetition obligations associated therewith; and (ii) preventing insurance companies from giving any notice of termination or otherwise modifying or cancelling any insurance policies without first obtaining relief from the automatic stay imposed by 11 U.S.C. § 362 (the "Motion"). In support of the Motion, the Debtor submits the Declaration of Walter

---

[1] The last four digits of iGPS Company LLC's federal tax identification number are 6297. The location of iGPS Company LLC's corporate headquarters and the service address is 225 E. Robinson Street, Suite 200, Orlando, Florida.

Myers in Support of First Day Motions and Applications (the "Myers Declaration")[2] filed contemporaneously herewith and incorporated herein by reference, and respectfully represents as follows:

## Background

### A. Overview

1. On June 4, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). The Debtor continues to operate its business and manages its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. Additional background facts on the Debtor, including an overview of the Debtor's business, information on the Debtor's corporate structure, information on the Debtor's debt structure and information on the events leading up to the Debtor's bankruptcy case is contained in the Myers Declaration.

### B. The Insurance Policies

3. In the ordinary course of business, the Debtor maintains a corporate risk program pursuant to which the Debtor procures numerous insurance policies (each, as may be revised, extended, supplemented, renewed or changed, an "Insurance Policy"). The Debtor maintains the Insurance Policies in amounts and types of coverage in accordance with laws governing the multiple jurisdictions in which the Debtor does business, as well as in accordance with their numerous contractual obligations. The Insurance Policies provide coverage for, among other things, personal property, commercial general liability, commercial automobile

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Myers Declaration.

liability, inland marine, umbrella liability, criminal liability, worker's compensation, employment practices liability, and fiduciary and director's and officer's liability.

4. The total annual premiums under the Debtor's 2013 Insurance Policies equal approximately $573,481. The current carriers of the Insurance Policies (as may be revised, extended, supplemented, renewed or changed, the "Insurance Carriers") are set forth in Exhibit "A" hereto, along with the corresponding type of coverage and individual annual premiums.

### Jurisdiction

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

6. By this Motion, pursuant to sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and the UST Guidelines, the Debtor respectfully requests authorization to (i) maintain insurance coverage levels required under their corporate risk program, including authority to revise, extend, supplement, renew or change insurance coverage as needed, and (ii) pay any prepetition and postpetition obligations associated therewith. As of the Petition Date, the Debtor estimates that premiums of approximately $112,000 are owing under the corporate risk program for the remainder of the current policy period, on account of annual premiums for the Debtor's Insurance Policies.

7. In addition, by this Motion, the Debtor respectfully requests an order preventing Insurance Carriers from giving any notice of termination or otherwise modifying or cancelling any Insurance Policies without obtaining relief from the automatic stay.

## Basis for Relief

### A. Doctrine of Necessity

8. The Debtor submits that payment of premiums due with respect to the Insurance Policies is appropriate pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, as well as the "necessity of payment" doctrine. Section 363 of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims. See, e.g., In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). In order to do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors[.]" Id. As set forth below, the Debtor can easily articulate a sound business justification for payment of the premiums related to the Insurance Policies.

9. Pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under the doctrine of necessity, a bankruptcy court may exercise its equity powers under section 105(a) to authorize a debtor to pay certain critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. See, e.g., In re Just for Feet, Inc., 242 B.R. 821, 824 (D. Del. 1999) (bankruptcy courts may exercise equity powers to authorize payment of prepetition debt where such payment is necessary to preserve the going concern value of a debtor's business); Ionosphere Clubs, 98 B.R. at 175 (section 105 empowers bankruptcy courts to authorize payment of prepetition debt "when such payment is needed to facilitate the rehabilitation of the debtor").

10. To the extent there has been reluctance to rely solely on section 105(a) or the doctrine of necessity, several courts have authorized payment of critical prepetition claims, or

implied that such authority would be granted, by relying on section 105(a) in conjunction with other sections of the Bankruptcy Code. See, e.g., In re Tropical Sportswear Int'l Corp., 320 B.R. 15, 19-20 (Bankr. M.D. Fla. 2005) (acknowledging that in certain circumstances section 363(b)(1) might authorize payment of prepetition claims if it was shown that such payment would "enable a successful reorganization and make even the disfavored creditors better off"); In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (noting that the preplan satisfaction of prepetition claims may be necessary to satisfy a debtor's fiduciary duties under sections 1106 and 1107 of the Bankruptcy Code).

11.  As debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is fiduciary with a "duty to maximize the value of the bankruptcy estate." Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 573 (3d Cir. 2003). "The debtor-in-possession's fiduciary duty to maximize includes the 'duty to protect and conserve property in its possession for the benefit of creditors.'" In re Mushroom Transp. Co., Inc., 382 F.3d 325, 339 (3d Cir. 2004) (citing In re Marvel Entm't Grp., Inc., 140 F.3d 463, 474 (3d Cir. 1998)). Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." CoServ, 273 B.R. at 497. The CoServ court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." Id.

12.  Recognizing the necessity of preserving the value of the Debtor's estate by the maintenance of insurance coverage, the Operating Guidelines for Chapter 11 Cases established by the Office of the United States Trustee for the District of Delaware (the "UST Guidelines") require debtors to maintain insurance coverage throughout their chapter 11 proceedings.

13. In addition, it is critical that the Debtor maintains its Insurance Policies in order to provide a comprehensive range of coverage that protects its business and property. Significantly, the Debtor's Insurance Policies provide coverage of its property and assets in certain "force majeur" types of event. Without such coverage, the Debtor would incur substantial costs associated with repairing the damage caused by such event. The Debtor's current coverage also is necessary to replace loss of business income after the occurrence of a major loss event that involves any type of business interruption. As noted above, many of the coverage requirements are mandated by law or by the contracts governing the Debtor's commercial activities. If these policies were allowed to lapse or be cancelled, the Debtor would be exposed to substantial liability for any damages resulting to persons and property of the Debtor and others.[3]

14. Further, if the Debtor is unable to pay the premiums necessary to maintain the Insurance Policies, it may be unable to find alternative insurance carriers willing to offer them similar insurance at a competitive price. While the Debtor questions the right of any insurer to terminate the Insurance Policies for non-payment of premiums, any litigation associated with such alleged termination would be contested, and thus, very costly to the Debtor's estate.

15. Prepetition premiums or other amounts due and owing on the Insurance Policies are minimal compared with the potential risk to the value of the Debtor's estate absent insurance coverage. Based upon the foregoing, the relief requested herein is amply justified.

---

[3] Maintenance of the Insurance Policies is also a condition to both the closing of and funding under the DIP Facility.

B. **The Automatic Stay**

16. The Debtor also requests that the Court prevent the Insurance Carriers from giving any notice of termination or otherwise modifying or canceling any Insurance Policies without obtaining relief from the automatic stay imposed by section 362 of the Bankruptcy Code. The purpose of this relief is to aid in the administration of the Debtor's bankruptcy case and to preserve the value of the business operations. The Debtor's Insurance Carriers may be unfamiliar with the protections afforded chapter 11 debtors under section 362 of the Bankruptcy Code, and thus, an order of this Court affirming these protections would help avoid costly and unnecessary litigation.

17. As a result of the commencement of the Debtor's chapter 11 case, and by operation of law pursuant to section 362 of the Bankruptcy Code, the automatic stay prevents all persons from, inter alia, (a) commencing or continuing any judicial, administrative or other proceeding against the Debtor (b) taking any action to exercise control over property of the estate, or (c) taking any action to collect, assess, or recover a claim against the Debtor that arose before the commencement of such cases. See 11 U.S.C. § 362(a).

18. The appropriate procedure for obtaining Court approval of termination under an insurance policy is to seek relief from the automatic stay under the provisions of section 362(d)(1) of the Bankruptcy Code, which require the Court to grant relief for "cause." In re Adana Mortg. Bankers, Inc., 12 B.R. 983, 988 (Bankr. N.D. Ga. 1980).

19. The injunctions contained in section 362 of the Bankruptcy Code are self-executing and constitute fundamental debtor protections, which, in combination with other provisions of the Bankruptcy Code, provide the Debtor with the "breathing spell" that is essential to the Debtor's ability to reorganize. See, e.g., Mar. Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991).

20. As fundamental as the foregoing protections may be, and notwithstanding that they arise as a matter of law upon commencement of a chapter 11 case, not all parties affected or potentially affected by the commencement of a chapter 11 case are aware of the Bankruptcy Code provisions or cognizant of their significance and impact. Experience has shown that it is often necessary to advise third parties of the existence and effect of section 362 of the Bankruptcy Code and, occasionally, it is necessary to commence proceedings in the bankruptcy court to enforce the protections contained therein.

21. The Debtor submits that this Court has ample authority to grant the relief sought herein. Under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 at 105-6 (15th ed. 2006) (collecting cases). This is consistent with the broad equitable authority of the bankruptcy courts. See, e.g., United States v. Energy Res. Co., 495 U.S. 545, 549 (1990).

22. Accordingly, the Debtor believes that under the circumstances of this chapter 11 case, entry of the proposed order, which incorporates a restatement of the applicable provisions of section 362 of the Bankruptcy Code, would help protect the Debtor from violations of these crucial provisions by Insurance Carriers. It would also spare the Debtor from the burden and expense of commencing proceedings to enforce the Bankruptcy Code. Accordingly, an order entered by this Court enforcing the automatic stay may increase substantially the efficiency of the administration of this case.

23. Further, this Court has granted similar relief to that requested herein in other cases. See, e.g., In re Centaur, LLC, Case No. 10-10799 (KJC) (Bankr. D. Del. Mar. 10,

2010); In re Natural Prods. Grp., LLC, Case No. 10-10239 (BLS) (Bankr. D. Del. Jan. 28, 2010); In re WCI Cmtys., Inc., Case No. 08-11643 (KJC) (Bankr. D. Del. Aug. 6, 2008); In re Global Power Equip. Grp. Inc., Case No. 06-11045 (BLS) (Bankr. D. Del. Oct. 3, 2006).

24. To the extent an Insurance Policy is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtor does not at this time intend to assume such agreement. Court authorization of payment shall not be deemed to constitute postpetition assumption or adoption thereof as an executory contract pursuant to section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing the Insurance Policies and reserves all of its rights under the Bankruptcy Code with respect thereto.

25. Pursuant to Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may grant relief within twenty-one (21) days after the filing of the petition regarding a motion to pay all or part of a prepetition claim only if such relief is necessary to avoid immediate and irreparable harm. See Fed. R. Bankr. P. 6003. Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtor's estate for the reasons as set forth above. Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

26. The Debtor requests a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, maintaining the Debtor's Insurance Policies, paying all obligations associated therewith and preventing cancellation of the Insurance Policies without obtaining stay relief are critically important to prevent irreparable damage to the Debtor's estate and necessary in the exercise of the Debtor's duties to safeguard, preserve and maintain its estate for the benefit of creditors.

Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h).

## **Notice**

27.    Notice of this Motion has been provided to the Office of the United States Trustee for the District of Delaware, counsel to the Purchaser, counsel to the DIP Lender, the Debtor's 30 largest unsecured creditors (including counsel if known), the Insurance Carriers (including counsel if known), and all parties requesting notices pursuant to Bankruptcy Rule 2002. The Debtor submits that no other or further notice need be provided.

28.    No previous motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests entry of an order (i) granting the relief requested herein and (ii) granting the Debtor such other and further relief as the Court deems just and proper.

Dated: June 5, 2013
       Wilmington, Delaware

FOX ROTHSCHILD LLP

By: _____
Jeffrey M. Schlerf (No. 3047)
John H. Strock (No. 4965)
L. John Bird (No. 5310)
Citizens Bank Center, Suite 1600
919 North Market Street
Wilmington, DE 19801
Telephone: (302) 654-7444

– and –

John K. Cunningham
Richard S. Kebrdle
Kevin M. McGill
Fan B. He
WHITE & CASE LLP
Southeast Financial Center
200 South Biscayne Boulevard, 49th Floor
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

*Proposed Attorneys for the Debtor and Debtor in Possession*