## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| iGPS COMPANY LLC,[1] | ) | Case No. 13-11459 (    ) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### INTERIM ORDER (1) AUTHORIZING POSTPETITION FINANCING, (2) GRANTING LIENS AND PROVIDING SUPER PRIORITY ADMINISTRATIVE EXPENSE PRIORITY, (3) AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING FOR ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND (5) SCHEDULING A FINAL HEARING, PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014

Upon the motion (the "***Motion***"), dated June 5, 2013 [Docket No. __], of iGPS Company LLC, as Debtor and Debtor-in-possession (the "***Debtor***"), pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (the "***Bankruptcy Code***") and in accordance with Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rule 4001-2 of the Local Bankruptcy Rules for the District of Delaware (the "***Local Rules***"), in the above captioned chapter 11 case (the "***Chapter 11 Case***"), for entry of an interim order (this "***Interim Order***"), granting the following relief on an interim basis:

**(I)     Interim DIP Financing**

    (A)    Authorizing the Debtor to obtain $12,000,000.00 in postpetition financing, pursuant to that certain *Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement* (as may be amended, modified, or supplemented, the "***DIP Credit Agreement***"), substantially in the form attached here to as ***Exhibit "1,"*** by and between the Debtor, as borrower, and Crystal Financial LLC, as Administrative Agent, Collateral Agent, and as Lender and secured party (the "***DIP Lender***"), which may be used

---

[1]    The last four digits of iGPS Company LLC's federal tax identification number are 6297. The location of iGPS Company LLC's corporate headquarters and the service address is 225 E. Robinson Street, Suite 200, Orlando, Florida.

for funding the Debtor's day-to-day operations and working capital needs;

(B)     Approval of the DIP Credit Agreement and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Lender, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("*UCC*") financing statements, and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified, or supplemented and in effect from time to time, the "***DIP Financing Agreements***");

(C)     Granting the DIP Lender the following Liens (as defined in section 101(37) of the Bankruptcy Code) and claims:

    (i)     First priority, priming, valid, perfected, and enforceable Liens (as defined below), subject only to the Carve Out (as defined below) and the Permitted Prior Liens (as defined below), upon substantially all of the Debtor's real and personal property as provided in and as contemplated by this Interim Order and the DIP Financing Agreements;

    (ii)    A superpriority administrative claim status in respect of all obligations under the DIP Financing Agreements (collectively, the "***DIP Obligations***"), subject to the Carve Out as provided herein;

**(II)**    **Interim Use of Cash Collateral --** Authorizing the Debtor's use of "cash collateral," as such term is defined in section 363 of the Bankruptcy Code ("*Cash Collateral*"), in which the Prepetition Lender has an interest;

**(III)**   **Modifying the Automatic Stay –** Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Interim Order;

**(IV)**    **Prepetition Replacement Liens --** Granting the Prepetition Lender (as defined below) adequate protection, including, among other things, Prepetition Replacement Liens and Prepetition Superpriority Claims (each as defined below) and certain other adequate protection as described in this Interim Order, to the extent of any diminution in the value of the Prepetition Lender's interest in the Prepetition Collateral having the priority set forth in this Interim Order, as adequate protection for the granting of the DIP Liens to the DIP Lender, the use of Cash Collateral, and for the imposition of the automatic stay;

(V)    **Final Hearing** – Scheduling a final hearing (the "***Final Hearing***") to consider entry of an order (the "***Final Order***") granting the relief requested in the DIP Motion on a final basis and approve the form of notice with respect to the Final Hearing;

and upon consideration of the *Declaration of Walter Myers in Support of First Day Motions and Applications*, dated June 5, 2013 (the "***Myers Declaration***"), and the Court having reviewed the Motion and held a hearing with respect to the Motion on June ___, 2013 (the "***Interim Hearing***"); upon the Motion, the Myers Declaration, and the record of the Interim Hearing and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

## I.    <u>Procedural Findings of Fact</u>

A.    **Petition Date.** On June 4, 2013 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "***Court***"). The Debtor has continued in the management and operation of its business and property as Debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

B.    **Jurisdiction and Venue.** This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Committee Formation.**  No official committee (a "***Committee***") of unsecured creditors, equity interest holders, or other parties in interests has been appointed in the Chapter 11 Case.

D.    **Notice.**  The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014, and the Local Rules.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, to certain parties in interest, including: (i) the Office of the United States Trustee; (ii) those creditors holding the thirty (30) largest unsecured claims against the Debtor's estate; (iii) iGPS Logistics LLC, as the Debtor's Prepetition Lender, (iv) the attorneys for iGPS Logistics LLC, (v) Crystal Financial LLC, as the proposed DIP Lender; (vi) the attorneys for Crystal Financial LLC; and (vii) all secured creditors of record.  Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2.

**II.    Debtor's Acknowledgements and Agreements**

E.    Without prejudice to the rights of parties in interest as set forth in Paragraphs 28 and 29 below, the Debtor admits, stipulates, acknowledges, and agrees that (collectively, Paragraphs E (1) through E (6) hereof shall be referred to herein as the "***Debtor's Stipulations***"):

> (1)    **Prepetition Credit Agreements**.  Prior to the commencement of the Chapter 11 Case, the Debtor was a party to the following agreements:
>
>> (a)    that certain *Loan and Security Agreement* dated November 24, 2009 (as amended and in effect, the "***Prepetition Loan Agreement***") with Bank of America, N.A., in its capacity as administrative and collateral agent for the Prepetition Lenders, the Prepetition Lenders (collectively, the "***Prepetition Lender***") and JPMorgan Chase Bank. N.A. and SunTrust Bank, in their capacities as co-syndication agents; and
>>
>> (b)    various other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of

4

Prepetition Lender, including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto

(collectively, as amended, modified, or supplemented and in effect, with the Prepetition Loan Agreement, the "***Prepetition Financing Agreements***").

(2)    **Prepetition Debt Amounts**.  As of the Petition Date, the Debtor was indebted to the Prepetition Lender under the Prepetition Financing Agreements, on account of extensions of credit in the approximate principal amount of $148.8 million, plus interest accrued and accruing (at the rates set forth in the Prepetition Financing Agreements), costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services secured by the Prepetition Financing Agreements (collectively the "***Prepetition Debt***"), and

(3)    **Prepetition Collateral**.  To secure the Prepetition Debt, the Debtor granted security interests and Liens (collectively, the "***Prepetition Liens***", and collectively with the Prepetition Debt, the "***Prepetition Loan Obligations***") to the Prepetition Lender upon substantially all of its personal property, including items defined as "Collateral" in the Prepetition Loan Agreements (collectively, the "***Prepetition Collateral***").[2] The Liens of the Prepetition Lender have priority over all other Liens except any Liens which are valid, properly perfected, unavoidable, and senior to the Prepetition Liens or set forth in Section 7.01 of the DIP Credit Agreement as "Permitted Encumbrances" (collectively, the "***Permitted Prior Liens***").

(4)    **Prepetition Loan Obligations**.

(a)    As of the Petition Date, the Debtor stipulates to the following:

(i)    the Prepetition Liens are valid, binding, enforceable, and perfected first-priority Liens, subject only to any Permitted Prior Liens, and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law,

---

2 The acknowledgment and agreement by the Debtors of the Prepetition Debt and the related liens, rights priorities and protections granted to or in favor of the Prepetition Lender, as set forth herein and in the Prepetition Financing Agreements, shall constitute a proof of claim on behalf of the Prepetition Lender in this Case in respect of the Prepetition Debt.

(ii)     the Prepetition Loan Obligations constitute legal, valid, and binding obligations of the Debtor, enforceable in accordance with the terms of the Prepetition Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code),

(iii)    no offsets, defenses, or counterclaims to any of the Prepetition Loan Obligations exist,

(iv)     no portion of the Prepetition Loan Obligations is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and

(v)      the Prepetition Loan Obligations constitute an allowed secured claim.

(b)      On the date that this Interim Order is entered, the Debtor has waived, discharged, and released the Prepetition Lender, together with its affiliates, members, agents, attorneys, officers, directors, and employees, of any right the Debtor may have

(i)      to challenge or object to any of the Prepetition Loan Obligations,

(ii)     to challenge or object to the security for the Prepetition Loan Obligations, and

(iii)    to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action arising out of, based upon, or related to the Prepetition Loan Obligations, the Prepetition Financing Agreements or otherwise.

(c)      The Debtor does not possess and will not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Loan Obligations, Prepetition Financing Agreements or the Prepetition Liens, or any claim of the Prepetition Lender pursuant to the Prepetition Financing Agreements or otherwise.

(5)      **Cash Collateral**.  The Prepetition Lender has a validly perfected, first priority security interest in and Lien on Cash Collateral, including all amounts on deposit in the Debtor's banking, checking, or other deposit accounts and all proceeds of the Prepetition Collateral, to secure the Prepetition Debt.

(6)   **Priming of DIP Facility**. In entering into the DIP Financing Agreements, and as consideration therefor, the Debtor hereby agrees that until such time as all DIP Obligations have been irrevocably paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Lender in its sole and exclusive discretion have been made) and the DIP Financing Agreements have been terminated in accordance with the terms thereof, the Debtor shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Lender under this Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

Furthermore, other than the rights granted to the DIP Lender as described in the DIP Financing Agreements and herein, and as consideration for the Prepetition Lender's consent to the use of its Cash Collateral, the Debtor hereby agrees that, until such time as the Prepetition Debt has been irrevocably paid in full in cash (or other arrangements for payment of the Prepetition Debt satisfactory to the Prepetition Lender in its sole and exclusive discretion have been made) and the Prepetition Financing Agreements have been terminated in accordance with the terms thereof, the Debtor shall not in any way prime or seek to prime the security interests and Prepetition Liens or Prepetition Replacement Liens provided to the Prepetition Lender by offering a subsequent lender or a party-in-interest a superior or pari passu Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

## III.   Findings Regarding the Postpetition Financing.

F.   **Need for Post-Petition Financing**. An immediate need exists for the Debtor to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of its estate. The ability of the Debtor to finance its operations, to preserve and maintain the value of the Debtor's assets, and to maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtor, its estate, its creditors, its equity holders, and the possibility for a successful reorganization or sale of the Debtor's assets.

G.   **No Credit Available on More Favorable Terms**. The Debtor has been unable to obtain any of the following:

(1)     unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

(2)     credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

(3)     credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or

(4)     credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien, in each case, on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Interim Order.

The Debtor is unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (as defined below).

H.     **Adequate Protection for Prepetition Lender.**  As a result of the grant of the DIP Liens, subordination to the Carve Out, the use of Cash Collateral authorized herein, and the imposition of the automatic stay, the Prepetition Lender is entitled to receive adequate protection pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code for any decrease in the value of its interest in the Prepetition Collateral (including Cash Collateral) resulting from the automatic stay or the Debtor's use, sale, or lease of the Prepetition Collateral (including Cash Collateral) during this Chapter 11 Case. As adequate protection, the Prepetition Lender will receive the Adequate Protection (as defined below) described in Paragraph 17 of this Interim Order. In light of such Adequate Protection, the Prepetition Lender (1) has consented to (a) the priming of the Prepetition Liens in the Prepetition Collateral by the DIP Liens, and (b) the Debtor's use of Cash Collateral, on the terms set forth in this Interim Order, (2) agrees that such Adequate Protection adequately protects the Prepetition Lender, and (3) subject to Paragraphs 17, 43 and 44 of this Interim Order, agrees that no further adequate protection is necessary,

subject to (a) the Prepetition Lenders' rights to withdraw its consent to the use of Cash Collateral.

J.      **Adequacy of the Budget.**  The Budget (as defined below), attached hereto as *Exhibit "2,"* is adequate, considering all of the Debtor's available assets, to pay the administrative expenses due and accruing during the period covered by this Interim Order.

K.      **Section 552 of the Bankruptcy Code.**  In light of their agreement to subordinate their Liens and superpriority claims to: (1) the Carve Out, in the case of the DIP Lender, and (2) the Carve Out and the DIP Liens, in the case of the Prepetition Lender, the DIP Lender and the Prepetition Lender are entitled to all rights and benefits of section 552(b) of the Bankruptcy Code and the Debtor shall not assert that the "equities of the case" exception shall apply.

L.      **Conditions Precedent to DIP Lender's Extension of Financing.**  The DIP Lender has indicated a willingness to provide financing to the Debtor in accordance with the DIP Credit Agreement and the other DIP Financing Agreements and subject to the following:

(1)     the entry of this Interim Order and, upon completion of the final hearing on the Motion, entry of the Final Order (and subject to the other terms and provisions of this Interim Order, including, without limitation, the limitations contained in the Budget, to make loans and other advances under the DIP Financing Agreements during the period between the entry of this Interim Order and the Final Order), and

(2)     findings by this Court that such financing is essential to the Debtor's estate, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims, security interests, and Liens and other protections granted pursuant to this Interim Order (and the Final Order) and the DIP Facility will not be affected by any subsequent reversal, modification, vacation, or amendment of this Interim Order (and, upon completion of the final hearing on the Motion, entry of the Final Order) or any other order, as provided in section 364(e) of the Bankruptcy Code.

M.      **Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code.**  The terms and conditions of the DIP Facility, the DIP Credit Agreement,

and the other DIP Financing Agreements, and the fees paid and to be paid thereunder (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration.  The DIP Facility was negotiated in good faith and at arms' length between the Debtor and the DIP Lender, and the use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

N.     **Relief Essential; Best Interest.**  The relief requested in the Motion (and as provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and personal property.  It is in the best interest of Debtor's estate that the Debtor be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement and the other DIP Financing Agreements, and to use the Cash Collateral of the Prepetition Lender.  The Debtor has demonstrated good and sufficient cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1.     The Motion is granted in accordance with the terms and conditions set forth in this Interim Order, the DIP Credit Agreement, and the other DIP Financing Agreements.

**I.     DIP FINANCING.**

A.     **Approval of Entry into the DIP Financing Agreements**.

2.     The Debtor is expressly and immediately authorized, empowered, and directed to execute and deliver the DIP Financing Agreements and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Agreements, and to execute and deliver all instruments, certificates, agreements, and

documents which may be required or necessary for the performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Financing Agreements. The Debtor is hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Credit Agreement and all other DIP Financing Agreements as such become due, including, without limitation, the Commitment Fee, the Termination Fee, and reasonable attorneys', financial advisors' and accountants' fees, and disbursements as provided for in the DIP Credit Agreement which amounts, subject to the provisions of Paragraph 52 below, shall not otherwise be subject to approval of this Court. Upon execution and delivery, the DIP Financing Agreements shall represent valid and binding obligations of the Debtor enforceable against the Debtor in accordance with their terms.

**B.** **Authorization to Borrow.**

3. In order to enable it to continue to operate its business during the Interim Period and subject to the terms and conditions of this Interim Order, the DIP Credit Agreement, the other DIP Financing Agreements, and the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), the Debtor is hereby authorized under the DIP Facility to borrow up to a total committed amount of $6,000,000 in accordance with the terms and conditions of the DIP Credit Agreement.

**C.** **Expenditure of DIP Proceeds.**

4. The proceeds of the DIP Facility (net of any amounts used to pay fees, costs, and expenses under the DIP Credit Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with and as may be limited by the Budget (subject to any variances thereto permitted under the

terms and conditions of the DIP Credit Agreement) and the Carve Out (as defined below), solely
as follows:

<blockquote>

(a)    to pay costs, expenses and fees in connection with the preparation, negotiation, execution and delivery of the DIP Credit Agreement and the other DIP Financing Agreements; and

(b)    for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Case, and other proper corporate purposes of Borrower not otherwise prohibited by the terms hereof for working capital, capital expenditures, and other lawful corporate purposes of the Debtor.

</blockquote>

**D.**      **Conditions Precedent**.

5.    The DIP Lender shall have no obligation to make any loan or advance
under the DIP Credit Agreement during the Interim Period unless the conditions precedent to
make such loan under the DIP Credit Agreement have been satisfied in full or waived, as
determined by the DIP Lender in its reasonable discretion, in accordance with the DIP Credit
Agreement.

**E.**      **The DIP Liens**.

6.    Effective immediately upon the entry of this Interim Order, the DIP
Lender is hereby granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the
Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable,
and automatically perfected postpetition security interests and Liens (collectively, the "***DIP
Liens***") senior and superior in priority to all other secured and unsecured creditors of the
Debtor's estate, including the Prepetition Liens in favor of the Prepetition Lender, except as
otherwise provided in this Interim Order with respect to Permitted Prior Liens, and subject to the
Carve Out, upon and to all of the following (collectively, the "***DIP Collateral***"):

(a) The Collateral, as defined in the Prepetition Loan Agreement, including:

(i)     all Accounts;

(ii)    all Goods, including Equipment, Inventory and Fixtures;

(iii)   all Documents, Instruments and Chattel Paper;

(iv)    all Letters of Credit and Letter-of-Credit Rights;

(v)     all Securities Collateral;

(vi)    all Investment Property;

(vii)   all Intellectual Property Collateral;

(viii)  all Commercial Tort Claims;

(ix)    all General Intangibles;

(x)     all Deposit Accounts;

(xi)    all Supporting Obligations;

(xii)   all books and records relating to the Collateral; and

(xiii)  to the extent not covered by clauses (i) through (xii), all other personal property of the Debtor, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing.

(b)     Bankruptcy Recoveries (as defined below), but only (A) the full amount of any such recovery or settlement thereof to the extent arising under Section 549 of the Bankruptcy Code and (B) all amounts necessary to reimburse the DIP Lender for the amount of the Carve Out, if any, used to finance the pursuit of such recovery or settlement with respect to all Bankruptcy Recoveries, and no other Bankruptcy Recoveries. As used herein, "Bankruptcy Recoveries" shall mean any claims and causes of action to which the Debtor may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtor or the estate of the Debtor under Chapter 5 of the Bankruptcy Code and any and all recoveries and settlements thereof.

(c)     The proceeds of all of the Debtor's interests in leaseholds, but not the leaseholds themselves, whether or not so perfected prior to the Petition Date.

(d)     All real estate owned by the Debtor.

**F.**   **DIP Lien Priority.**

7.   The DIP Liens to be created and granted to the DIP Lender, as provided herein, are:

(a)   created pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code,

(b)   first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to the DIP Collateral, and

(c)   subject only to (i) the Carve Out, and (ii) the Permitted Prior Liens.

The DIP Liens shall secure all DIP Obligations and the proceeds of the DIP Collateral shall be applied in the same order and priority set forth in the DIP Credit Agreement. The DIP Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Case and shall be valid and enforceable against any trustee appointed in the Chapter 11 Case, upon the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each a "***Successor Case***"), and/or upon the dismissal of the Chapter 11 Case. The DIP Liens shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or the assertion by the Debtor of the "equities of the case" exception of section 552 of the Bankruptcy Code, and, upon entry of the Final Order, shall not be subject to section 506(c) of the Bankruptcy Code.

**G.**   **Enforceable Obligations.**

8.   The DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtor, and shall be enforceable against the Debtor, its estate, and any successors thereto, and their creditors in accordance with their terms.

**H.**    **Protection of the DIP Lender and Other Rights**.

9.      From and after the Petition Date, the Debtor shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreements and this Interim Order and in compliance with the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement).

10.     Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business or other proceeds resulting therefrom, except (x) with respect to the sale of assets as contemplated in the 363 Sale Motion and the assumption and assignment of leases as contemplated in the Sale Order Motion (as each of those terms is defined in the DIP Credit Agreement), and (y) as otherwise permitted in the DIP Facility under the DIP Credit Agreement and the other DIP Financing Agreements and in accordance with and as may be limited by the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement).

**I.**    **Superpriority Administrative Claim Status.**

11.     Subject to the Carve Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "*DIP Superpriority Claim*" and, together with the DIP Liens, collectively, the "*DIP Protections*") with priority in the Chapter 11 Case under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) of the Bankruptcy

Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment.

12.     Absent the DIP Lender's prior written consent, so long as any portion of the DIP Obligations remain outstanding and unpaid, the Prepetition Lender will not exercise or seek to exercise any rights or remedies (including set-off) with respect to the Prepetition Loan Obligations or any Prepetition Collateral, institute any action or proceeding with respect to such rights or remedies (including any action of foreclosure or any action or petition to lift or vacate any stay of proceedings), contest, protest or object to any foreclosure proceeding or other Lien enforcement action brought by the DIP Lender, the exercise of any right under any lockbox agreement, control agreement, blocked account agreement, landlord waiver or bailee's letter or similar collateral agreement or arrangement to which the Prepetition Lender is a party, or any other exercise by any such Person, of any rights and remedies relating to the DIP Obligations and/or DIP Collateral under the DIP Financing Agreements or applicable law relating to the rights of the holder of such DIP Obligation or such DIP Lien, or object to the forbearance by the DIP Lenders from bringing or pursuing any foreclosure proceeding or action or any other exercise of any rights or remedies relating thereto.

13.     The DIP Lender shall have the exclusive right to enforce rights and exercise remedies (including set-off and the right to credit bid their debt) in respect of and make determinations regarding the release of the DIP Liens and the disposition of the DIP Collateral without any consultation with or the consent of the Prepetition Lender; provided, that (A) the Prepetition Lender may take any action (not adverse to the DIP Liens on the DIP Collateral securing the DIP Obligations, or the rights of the DIP Lender to exercise remedies in respect thereof) in order to preserve or protect its Lien on the DIP Collateral; (B) the Prepetition Lender

may file any necessary responsive or defensive pleadings in opposition to any motion, claim, adversary proceeding, or other pleading made by any person objecting to or otherwise seeking the disallowance of the claims of the Prepetition Lender, including any claims secured by the Prepetition Collateral, if any; and (C) the Prepetition Lender may join (but not exercise any control with respect to) any judicial foreclosure proceeding or other judicial lien enforcement proceeding with respect to the DIP Collateral initiated by the DIP Lender to the extent that any such action could not reasonably be expected, in any material respect (as determined in the sole discretion of the DIP Lender), to restrain, hinder, limit, delay for any material period or otherwise interfere with the exercise of remedies by the DIP Lender (it being understood that the Prepetition Lender shall not be entitled to receive any proceeds thereof unless otherwise expressly permitted herein).

14.    In exercising rights and remedies with respect to the DIP Obligations and the DIP Collateral, the DIP Lender may enforce the provisions of the DIP Financing Agreements and exercise remedies thereunder and hereunder, all in such order and in such manner as the DIP Lender may determine in the exercise of its sole discretion. Such exercise and enforcement shall include the rights to sell or otherwise dispose of DIP Collateral upon foreclosure, to incur expenses in connection with such sale or disposition, and to exercise all the rights and remedies of a secured lender under the Uniform Commercial Code and under the comparable law of any applicable jurisdiction and of a secured creditor under the Bankruptcy Code or under any applicable non-bankruptcy law of any applicable jurisdiction. The Prepetition Lender hereby waives any and all rights it may have as a junior creditor to object to the manner in which the DIP Lender may seek to enforce or collect the DIP Obligations or realize upon the DIP Liens and/or DIP Collateral, regardless of whether any action or failure to act by or on behalf of the

DIP Lender is adverse to the interest of the Prepetition Lender, but subject in all events, to the DIP Lender acting in good faith. Additionally, the Prepetition Lender shall cooperate with and not interfere with the DIP Lender's rights hereunder with regard to any enforcement actions undertaken by the DIP Lender.

15.     Other than the Carve Out, subject to entry of the Final Order, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Case, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.  Furthermore, other than the rights of the DIP Lender and the Carve Out, subject to entry of the Final Order, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Case, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the secured claims of the Prepetition Lender under the Prepetition Financing Agreements, or the Superpriority Claim granted to the Prepetition Lender hereunder.

## II.     USE OF CASH COLLATERAL.

### A.     Authorization to Use Cash Collateral.

16.     Pursuant to the terms and conditions of this Interim Order, the DIP Facility, the DIP Credit Agreement, and the other DIP Financing Agreements, and in accordance with and as may be limited by the budget (as the same may be modified, supplemented, or updated from time to time consistent with the terms of the DIP Credit Agreement, the "*Budget*"), the Debtor is authorized to use Cash Collateral and to use the advances under the DIP Facility

during the period commencing immediately after the entry of the Interim Order and terminating

upon notice being provided by the DIP Lender to the Debtor and the Prepetition Lender that (i) a

DIP Order Event of Default (as defined below) has occurred and is continuing, and (ii) the

termination of the DIP Credit Facility.

B.    **Adequate Protection for Prepetition Lender.**

17.    As adequate protection for the interest of the Prepetition Lender in the

Prepetition Collateral (including Cash Collateral) on account of the granting of and subordination

to the DIP Liens, subordination to the Carve Out, the Debtor's use of Cash Collateral, and other

decline in value arising out of the automatic stay or the Debtor's use, sale, depreciation, or

disposition of the Prepetition Collateral, including the disposition of assets as contemplated in

the 363 Sale Motion and the APA Motion, the Prepetition Lender shall receive adequate

protection as follows (collectively, "***Adequate Protection***"):

(a)    **Prepetition Replacement Liens**.  To the extent of the diminution in the value of the interest of the Prepetition Lender in the Prepetition Collateral, the Prepetition Lender shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code additional and replacement security interests and Liens in the DIP Collateral (the "***Prepetition Replacement Liens***") which shall be junior only to the Carve Out, the DIP Liens securing the DIP Obligations, and Permitted Prior Liens.

(b)    **Prepetition Superpriority Claim**.  To the extent of the diminution in the value of the interests of the Prepetition Lender in the Prepetition Collateral, the Prepetition Lender shall have an allowed superpriority administrative expense claim (the "***Prepetition Superpriority Claim***") which shall have priority (except with respect to (i) the DIP Liens, (ii) the DIP Superpriority Claim, and (iii) the Carve Out), in the Chapter 11 Case under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such

expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment. Other than the DIP Liens, the DIP Superpriority Claim, and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Case, or in any Successor Case, will be senior to, prior to, or on parity with the Prepetition Superpriority Claim. The Prepetition Superpriority Claim shall be secured by Liens in the DIP Collateral which shall be junior only to the Carve Out and the DIP Liens securing the DIP Facility (for purposes hereof, such liens will be deemed part of the "Prepetition Replacement Liens").

(c)     **Confirmation of Credit Bidding Rights.** Notwithstanding anything herein to the contrary, the Prepetition Lender, or any designee or assignee, shall have the absolute right, as contemplated by section 363(k) of the Bankruptcy Code, to "credit bid," in full or in part, the amount of its secured claim in connection with the sale of any of the Debtor's assets occurring pursuant to section 363 of the Bankruptcy Code or included as part of any plan of reorganization.

C.     **Adequate Protection Upon Sale of Debtor's Assets.**

18.     As additional adequate protection for the interest of the DIP Lender and the interest of the Prepetition Lender on account of the Debtor's use, sale, depreciation, or disposition of its assets, including the disposition of assets as contemplated in the Sale Order Motion, upon the disposition of the Debtor's assets as contemplated by the Sale Order Motion, such assets shall be sold free and clear of the DIP Liens, the Prepetition Liens, and the Prepetition Replacement Liens. *provided, however,* that such DIP Liens, Prepetition Liens, and the Prepetition Replacement Liens shall attach to the proceeds of any such sale in the order and priority as set forth in this Interim Order, and all such proceeds shall be paid first, to the DIP Lender in cash at a closing of a Permitted Sale as provided for under Section 6.21(a) of the DIP Credit Agreement to repay all DIP Obligations in full, and to the extent of any excess sale proceeds, then to the Prepetition Lender to repay all Prepetition Debt.

**D.**    **Section 507(b) Reservation for the Prepetition Lender to Seek Further Adequate Protection.**

19.    Nothing herein shall impair or modify the Prepetition Lender's rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Lender hereunder is insufficient to compensate for the diminution in value of the interest of the Prepetition Lender in the Prepetition Collateral during the Chapter 11 Case or any Successor Case; ***provided, however,*** that any section 507(b) claim granted in the Chapter 11 Case to the Prepetition Lender shall be junior in right of payment to all DIP Obligations and subject to the Carve Out.

**III.**    <u>POSTPETITION LIEN PERFECTION</u>.

20.    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Prepetition Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of Lien, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP Liens and the Prepetition Replacement Liens or to entitle the DIP Liens and the Prepetition Replacement Liens to the priorities granted herein.

21.    Notwithstanding the foregoing, the DIP Lender and the Prepetition Lender may, in its/their discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents with respect to the DIP Liens and the Prepetition Replacement Liens, respectively, and each is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other

similar instruments and documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Case.

22.    The DIP Lender shall, in addition to the rights granted to it under the DIP Financing Agreements, be deemed to be an additional covered "secured party" (or any other similar or other term of similar meaning, import or effect) under and with respect to all third party notifications in connection with the Prepetition Revolver Financing Agreements, all Prepetition Collateral access agreements, and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Prepetition Collateral, including, without limitation, each collateral access agreement duly executed and delivered by any landlord, warehouseman, and/or bailee of the Debtor, and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card processing agreements (all such agreements being collectively defined herein as the "*Prepetition Third Party Agreements*"). Until such time as the DIP Obligations have been indefeasibly paid in full, (a) the Prepetition Lender shall serve as the DIP Lender's agent in respect of any such Prepetition Third Party Agreements, and (b) in the event the Prepetition Lender comes into possession of any DIP Collateral and/or Prepetition Collateral, the Prepetition Lender shall hold any such collateral in trust for the benefit of the DIP Lender and shall forthwith pay over to and/or deliver to the DIP Lender such DIP Collateral and/or Prepetition Collateral, as applicable, to be credited against the payment of the DIP Obligations, whether matured or unmatured, in accordance with the terms of the DIP Financing Agreements. In addition, so long as any portion of the DIP Obligations shall remain unpaid and outstanding, the Prepetition Lender shall (i) not take any action under any Prepetition Third Party Agreement without the prior written consent of the DIP Lender (provided

that, the foregoing restriction notwithstanding, the Prepetition Lender shall be permitted to inspect and view the Collateral in accordance with the applicable terms of any such Prepetition Third Party Agreement(s)), and (ii) the Prepetition Lender shall take direction from and perform all actions reasonably requested by the DIP Lender from time to time arising under, in connection with, or with respect to any such Prepetition Third Party Agreements, and the Prepetition Lender shall cooperate with and not interfere with the DIP Lender's rights hereunder with respect to such Prepetition Third Party Agreements and any collateral covered thereby.

23.    In addition to and in furtherance of any other rights granted to the DIP Lender under the DIP Financing Agreements:

a)    Any and all rights of distraint, levy, and execution which a landlord, warehouseman, bailee, or other third party may now or hereafter have against the DIP Collateral; (ii) any and all statutory liens, security interests, or other liens which a landlord, warehouseman, bailee, or other third party may now or hereafter have in the DIP Collateral; and (c) any and all other interests or claims of every nature whatsoever which a landlord, warehouseman, bailee, or other third party may now or hereafter have in or against the DIP Collateral for any rent, storage charges, or other sums due, or to become due, to such landlord, warehouseman, bailee, or other third party by the Debtor, shall be and the same hereby is deemed to be junior and subordinate to the rights of the DIP lender in and to the DIP Collateral;

b)    No landlord, warehouseman, bailee, or other third party may exercise any of such party's rights, remedies, powers, privileges, or discretions with respect to the DIP Collateral, or such party's liens or security interests in the DIP Collateral, unless and until said party receives written notice from an officer of the DIP Lender that the Debtor's obligations to

the DIP Lender have been paid in full, and that the commitment of the DIP Lender to make loans or furnish other financial accommodations to the Debtor and any affiliates has been terminated;

c)    In the event of the exercise by the DIP Lender of its rights upon default with respect to the DIP Collateral, the DIP Lender shall have a reasonable time, but in no event later than the date that is one hundred eighty (180) days from the date of delivery of notice to the Debtor of such default in which to repossess and/or dispose of the DIP Collateral from the premises. In those circumstances, and subject to the DIP Lender's compliance with the provisions of Paragraph 23(d) below, the affected landlord, warehouseman, bailee, or other third party shall be required, upon reasonable prior written notice from the DIP Lender, (a) cooperate with the DIP Lender in gaining access to the subject premises for the purpose of repossessing said DIP Collateral and (b) if requested by the DIP Lender, permit the DIP Lender, or its agents or nominees, to dispose of the DIP Collateral on the demised premises in a manner reasonably designed to minimize any interference with any of the landlord's, warehouseman's, bailee's, or other third party's other tenants at the subject premises.  The DIP Lender shall promptly repair, at the DIP Lender's sole cost and expense (subject to any reimbursement and/or indemnification rights as may exist under the DIP Financing Agreements), any physical damage to the premises actually caused by the DIP Lender (or its agents or nominees), but shall not be liable for any diminution in value of the premises caused by the removal or absence of the DIP Collateral; and

d)    To the extent not paid or prepaid by the Debtor, the DIP Lender shall pay the affected landlord, warehouseman, bailee, or other third party a sum for its use and occupancy of the subject premises (subject to the duration limitations provided in Paragraph 23(c) above) on a *per diem* basis in an amount equal to the monthly base rent required to be paid by the Debtor under the applicable occupancy or other agreement from the date on which the DIP Lender shall

have taken possession of the DIP Collateral located in or upon such premises until the date on which the DIP Lender vacates the subject premises; *it being understood, however*, that the DIP Lender shall not, thereby, have assumed any of the obligations of the Debtor to the affected landlord, warehouseman, bailee, or other third party, including, without limitation, any obligation to pay any rent or other sums owing by the Debtor relating to the Debtor's use or occupancy of the subject premises for periods preceding the date on which the DIP Lender shall have taken possession of the DIP Collateral located in or upon such premises.

24.      This Interim Order shall constitute an order and direction by the Court to any bank, financial institution, or other counter-party to any Prepetition Third Party Agreement that is a deposit account control agreement, securities account control agreements, credit card processing agreement, or similar agreement that this Interim Order shall serve to impose DIP Lender's "control" over any deposit or other bank account, any securities account, or any credit card processing account of the Debtor with any such institution, and further that so long as any portion of the DIP Obligations shall remain outstanding and unpaid, any such affected institution, upon receipt of a copy of this Interim Order, shall comply with the instructions provided by the DIP  Lender concerning any such account(s), including, without limitation, the disposition of any sums or assets held in such account(s) without further action or direction by the Debtor or the Prepetition Lender.

25.      The Debtor shall execute and deliver to the DIP Lender and the Prepetition Lender all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents as the DIP Lender or the Prepetition Lender may reasonably request to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens and Prepetition Replacement Liens granted pursuant hereto.

26.    The DIP Lender and the Prepetition Lender, in its/their discretion, may file a photocopy of this Interim Order as a financing statement with any recording office designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Interim Order.

27.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Financing Agreements and this Interim Order as necessary to:

    (a)    permit the Debtor to grant the DIP Liens and the Prepetition Replacement Liens and to incur all liabilities and obligations to the DIP Lender under the DIP Financing Agreements, the DIP Facility, and this Interim Order, and

    (b)    authorize the DIP Lender and the Prepetition Lender to retain and apply payments hereunder as provided by the DIP Financing Agreements and this Interim Order.

## IV.    RESERVATION OF CERTAIN THIRD PARTY RIGHTS AND BAR OF CHALLENGES AND CLAIMS.

28.    Nothing in this Interim Order shall prejudice whatever rights any Committee(s) or any other party-in-interest (other than the Debtor) may have to do any of the following (subject to the Committee or any other party in interest first obtaining standing from the Court to do so):

    (a)    to object to or challenge the Debtor's Stipulations, including (i) the validity, extent, perfection, or priority of the security interests and Liens of the Prepetition Lender in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Debt, or

    (b)    to bring suit against the Prepetition Lender in connection with or related to the Prepetition Debt, or the actions or inactions of the Prepetition Lender arising out of or related to the Prepetition Debt;

(any of the foregoing actions being defined herein as a "*Challenge*"); *provided that*, unless any official Committee(s) or any other party-in-interest with requisite standing commences a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against the Prepetition Lender in the nature of a setoff, counterclaim, or defense to the Prepetition Loan Obligations (including but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against the Prepetition Lender), by the earlier of (x) the deadline for the submission of competitive bids in connection with the Sale Order Motion; or (y) (i) **sixty (60) days** following the appointment of the first official Committee, or (ii) if no official Committee is appointed, **seventy-five (75) days** following entry of the Final Order (collectively, (x) and (y) shall be referred to as the "*Challenge Period*" and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "*Challenge Period Termination Date*"), *then* (aa) any and all such challenges and objections by any party (including, without limitation, any official Committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party-in-interest) **shall be deemed to be forever waived and barred**, and (bb) the Prepetition Loan Obligations shall be deemed to be allowed in full as a secured claim within the meaning of section 506 of the Bankruptcy Code, with any resulting deficiency claim being treated as an allowed general unsecured claim, in each case and for all purposes, including without limitation, in connection with the Chapter 11 Case, and (cc) the Debtor's Stipulations shall be binding on all creditors, interest holders, parties-in-interest, the Committee and any chapter 11 or chapter 7 trustee appointed in this Case or any Successor Case.

## V.    CARVE OUT AND PAYMENT OF PROFESSIONALS.

29.    Subject to the terms and conditions contained in this Paragraph 29, the DIP Liens, DIP Superpriority Claim, the Prepetition Liens, the Prepetition Replacement Liens, and the Prepetition Superpriority Claims are subordinate only to the following (collectively, the "Carve Out"):

(a)    allowed administrative expenses pursuant to 28 U.S.C. Section 1930(a)(6) for fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee (collectively, the "*U.S. Trustee Fees*");

(b)    professional fees of Winter Harbor LLC, and professional fees and costs and expenses incurred by, professionals or professional firms retained by the Debtor and of any Committee(s) and out-of-pocket costs and expenses incurred by members of the Committee(s), always as provided in and as may be limited by the Carve Out Budget (defined below) and allowed by the Court (collectively, the "*Case Professionals*"), in an aggregate amount not to exceed the sum of $2,350,000.00;

(c)    In addition to the $2,350,000 referred to in subparagraph (b) above, there will be an additional $125,000 carved out for the fees and expenses incurred by Houlihan Lokey, the prospective financial advisor for the Debtor;

(d)    As used herein, "*Carve Out Budget*" means that budgetary projection of professional fees and expenses for Case Professionals, on an accrual basis, annexed hereto marked *Exhibit "3"*.

30.    Notwithstanding anything in this Interim Order to the contrary, the Prepetition Liens, the Prepetition Replacement Liens, and the Prepetition Superpriority Claims shall be subject and subordinate to the Debtor's rights under section 506(c) of the Bankruptcy Code with respect to any unpaid fees and costs (at any time allowed) of Winter Harbor LLC, White & Case LLP, and Fox Rothschild LLP incurred through the Closing Date (as defined in the Asset Purchase Agreement (as referred to in the Sale Order Motion)) in excess of the Carve Out.

31.     Either or both, DIP Lender and Prepetition Lender, may declare a "Carve Out Event" and terminate this Interim Order if Winter Harbor LLC, any CRO, the Committee, or any other Case Professionals exceed the budgeted line item amount for all professionals contained in the Carve-Out Budget attached to this Interim Order, if, at any time prior to a sale of substantially all of the Debtor's assets pursuant to 11 U.S.C. §363, the Chapter 11 administrative expenses exceed the total amount of the DIP Budget or the fees and expenses of the Case Professionals exceed the Carve Out Budget, the Professionals fail to timely provide DIP Lender and Pre-Petition Lender with weekly flash reports reflecting the services rendered, time expended and dollar value ascribed to the professional services performed during the prior week for each week this Interim Order remains in effect, or if there is a DIP Order Event of Default under this Interim Order.

32.     Notwithstanding anything to the contrary contained herein, so long as no notice of the occurrence of a DIP Order Event of Default shall have been delivered, the Debtor shall be permitted to pay compensation and reimbursement of expenses allowed and payable under 11 U.S.C. §§328, 330 and 331, as the same may be due and payable and allowed by the Court, shall in all instances be limited by, and not exceed, the Carve Out. In addition, the amount of the Carve Out shall automatically reduce dollar-for-dollar by the amount of compensation allowed and paid during the Chapter 11 Case. Furthermore, the Committee and its professionals shall be limited to the use of $25,000 of the Carve Out on account of fees incurred in connection with the investigation of any claim relating to the Prepetition Loan Obligations; provided that no portion of the Carve Out may be used by the Committee for the purpose of objecting to the allowance of any portion of the Prepetition Loan Obligations and/or the validity and enforceability of the Prepetition Liens or to bring any Challenge. Nothing contained herein

shall limit payment of compensation and reimbursement of expenses allowed and payable under 11 U.S.C. §§ 328, 330 and 331, as the same may be due and payable and allowed by the Court even if they exceed the amounts contained in the Budget or the Carve Out Budget, out of funds other than the Carve Out, after (x) the DIP Obligations have been irrevocably paid in full to the DIP Lender, (y) the Prepetition Loan Obligations have been irrevocably paid in full to the Prepetition Lender, and (z) the Challenge Period Termination Date with no Challenge having been brought.

33.     Nothing herein, including the inclusion of line items in the Budget or the Carve Out Budget for Case Professionals, shall be construed as consent to the allowance of any professional fees or expenses of the Debtor, of any Committee, or of any person, or shall affect the right of the DIP Lender or the Prepetition Lender to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts not set forth in the Budget or in excess of the Carve Out Budget. Any unused portion of the Carve Out shall at all times remain Cash Collateral as provided herein.

## VI.    COMMITMENT TERMINATION DATE, DIP EVENT OF DEFAULT, AND REMEDIES

### A.    Commitment Termination Date

34.     All DIP Obligations and Prepetition Loan Obligations shall be immediately due and payable and all authority to use the proceeds of the DIP Facility and to use Cash Collateral shall cease on the date that is the earliest to occur of any of the following (the "*Commitment Termination Date*"):

(a)     the date that is three (3) months after the Closing Date;

(b)     the date on which the maturity of the DIP Obligations is accelerated and the commitments under the DIP Facility (the "*DIP Commitments*") have been irrevocably terminated as a result of the occurrence of an Event of Default (as defined in the DIP Credit Agreement) in accordance with the DIP Credit Agreement;

(c)    the failure of the Debtor to obtain entry of the Final Order on or before the date which is thirty (30) days after the Closing Date;

(d)    the closing of a sale of all or substantially all of the assets of the Borrower pursuant to the 363 Sale Motion and/or the APA Sale Motion;

(e)    the termination of the Asset Purchase Agreement prior to the Closing; or

(f)    the effective date of a chapter 11 plan (a "*Plan*").

**B.    DIP Events of Default.**

35.    The occurrence of the Commitment Termination Date shall constitute a "*DIP Order Event of Default.*"

36.    Unless and until the DIP Obligations have been irrevocably repaid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Lender in its sole and exclusive discretion have been made) and all DIP Commitments have been irrevocably terminated, the protections afforded to the DIP Lender pursuant to this Interim Order and under the DIP Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting the Chapter 11 Case into a Successor Case, and the DIP Liens and the DIP Superpriority Claim shall continue in the Chapter 11 Case and in any Successor Case, and such DIP Liens and DIP Superpriority Claim shall maintain their respective priorities as provided by this Interim Order.

37.    Unless and until the Prepetition Loan Obligations have been irrevocably repaid in full in cash (or other arrangements for payment of the Prepetition Loan Obligations satisfactory to the Prepetition Lender in its sole and exclusive discretion have been made), the protections afforded to the Prepetition Lender pursuant to this Interim Order and under the Prepetition Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting the Chapter 11 Case into a Successor Case, and the Prepetition Liens, the Prepetition Replacement Liens, and the Prepetition Superpriority Claim

shall continue in the Chapter 11 Case and in any Successor Case, and such Prepetition Liens, Prepetition Replacement Liens and Prepetition Superpriority Claims shall maintain their respective priorities as provided by this Interim Order.

       **C.**    **Rights and Remedies Upon DIP Order Event of Default.**

       38.    Any automatic stay otherwise applicable to the DIP Lender or Prepetition Lender is hereby modified so that (i) after the occurrence of any DIP Order Event of Default and (ii) at any time thereafter during the continuance of such DIP Order Event of Default, upon five (5) days prior written notice of such occurrence, in each case given to each of (a) the Debtor, (b) counsel to the Debtor, (c) counsel for any Committee(s) (or the Debtor's thirty (30) largest unsecured creditors of the Debtor if no such committee has theretofore been appointed), (d) the Prepetition Lender, (e) counsel to the Prepetition Lender, and (f) the Office of the United States Trustee (a "***Default Notice***"), the DIP Lender and Prepetition Lender shall be entitled to exercise their rights and remedies in accordance with the DIP Financing Agreements and the Prepetition Financing Agreements; ***provided that***, in the case of the exercise of any rights and/or remedies by the Prepetition Lender under the Prepetition Financing Agreements, such exercise shall be subject to the prior indefeasible payment in full of the DIP Obligations and the termination of the DIP Financing Agreements.

       39.    After expiration of the five (5) day notice period by the DIP Lender of the occurrence of a DIP Order Event of Default and such DIP Order Event of Default still continuing:

       (a)    the Debtor shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Lender as provided in the DIP Financing Agreements and this Interim Order;

       (b)    the DIP Lender shall continue to apply such proceeds in accordance with the provisions of the DIP Financing Agreements and this Interim Order;

(c)     the Debtor shall have no right to use any of such proceeds, nor any other Cash Collateral, other than towards the satisfaction of the DIP Obligations and the Carve Out; and

(d)     any obligation otherwise imposed on the DIP Lender to provide any loan or advance to the Debtor pursuant to the DIP Facility shall be suspended.

40.     Following the giving of a Default Notice by the DIP Lender, the Debtor, the Committee(s) appointed in the Chapter 11 Case, if any, and the Prepetition Lender, shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether a DIP Order Event of Default has occurred.   If the Debtor, any such Committee(s) or the Prepetition Lender do not contest the occurrence of a DIP Order Event of Default and therefore the right of the DIP Lender to exercise its remedies, or if the Debtor, any such Committee(s) or the Prepetition Lender do timely contest the occurrence of a DIP Order Event of Default, and the Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the DIP Lender and the Prepetition Lender, shall automatically terminate at the end of such five (5) day notice period.

41.     Subject to the provisions of Paragraphs 22, 27, 38, 39 and 40 above, upon the occurrence of a DIP Order Event of Default and the expiration of the five (5) day period following the delivery of a Default Notice, the DIP Lender and Prepetition Lender are authorized to exercise its/their remedies and proceed under or pursuant to the DIP Financing Agreements and Prepetition Financing Agreements.   All proceeds realized from any of the foregoing shall be turned over to the DIP Lender or the Prepetition Lender, as appropriate, for application to the Carve Out (if not previously funded as provided herein), the DIP Obligations, and the Prepetition Debt, and in accordance with the provisions of the DIP Financing Agreements, the Prepetition

Financing Agreements and this Interim Order, subject to the priorities between the DIP Lender and the Prepetition Lender.

42.     Nothing included herein shall prejudice, impair, or otherwise affect the DIP Lender's or the Prepetition Lender's rights to seek any other or supplemental relief in respect of the Debtor, nor the DIP Lender's rights, as provided in the DIP Credit Agreement, to suspend or terminate the making of loans and granting financial accommodations under the DIP Credit Agreement.

### D.     No Waiver of Remedies.

43.     The delay in or the failure of the DIP Lender or the Prepetition Lender to seek relief or otherwise exercise its rights and remedies shall not constitute a waiver of any of the DIP Lender's or the Prepetition Lender's rights and remedies. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights and remedies of the DIP Lender or the Prepetition Lender under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the DIP Lender or the Prepetition Lender to: (i) request conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Case, or the appointment of a trustee in the Chapter 11 Case; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan; or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the DIP Lender or the Prepetition Lender may have.

### VII.    CERTAIN LIMITING PROVISIONS

### A.     Section 506(c) Claims and Waiver

44.     Nothing contained in this Interim Order shall be deemed a consent by the DIP Lender or the Prepetition Lender to any charge, Lien, assessment, or claim against the DIP

Collateral, the DIP Liens, the Prepetition Collateral, or the Prepetition Replacement Liens under section 506(c) of the Bankruptcy Code or otherwise; *provided, however*, that during the Interim Period there shall be no waiver of section 506(c) of the Bankruptcy Code.

45.    As a further condition of (a) the DIP Facility and any obligation of the DIP Lender to make credit extensions pursuant to the DIP Financing Agreements, and (b) the Prepetition Lender's consent to (x) the priming contemplated by the DIP Facility and (y) the Debtor's use of the Prepetition Lender's Cash Collateral (in each case upon and subject to the terms set forth herein), upon entry of the Final Order, the Debtor (and any successor thereto or any representative thereof, including any trustees appointed in the Chapter 11 Case or any Successor Case) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code as against the DIP Lender and/or the DIP Collateral, and the Prepetition Lender and/or the Prepetition Collateral (but subject in all respects to Paragraph 30 hereof in the case of the Prepetition Lender and/or the Prepetition Collateral), as applicable, or any other assets that serve as collateral for the DIP Obligations or the Prepetition Loan Obligations.

**B.    Proceeds of Subsequent Financing**

46.    Without limiting the provisions and protections of Paragraph 48 below, if at any time prior to the irrevocable repayment in full of all DIP Obligations and the termination of the DIP Lender's obligations to make loans and advances under the DIP Facility, including subsequent to the confirmation of any Plan with respect to the Debtor, the Debtor's estate, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(c)(1) or 364(d) of the Bankruptcy Code in violation of the DIP Financing Agreements and this Interim Order, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned

over to the DIP Lender and applied in reduction of the DIP Obligations, and thereafter, to the

Prepetition Lender and applied in reduction of the Prepetition Debt.

    **C.**    **Prohibited Orders.**

    47.    Unless the DIP Lender has provided its prior written consent, or all DIP

Obligations have been irrevocably paid in full in cash (or will be irrevocably paid in full in cash

upon entry of an order approving indebtedness described in Paragraph 46 above, or other

arrangements for the payment of the DIP Obligations satisfactory to the DIP Lender in its sole

and exclusive discretion have been made) and all DIP Commitments have terminated, there shall

not be entered in the Chapter 11 Case, or in any Successor Case, any order which authorizes any

of the following:

    (a)    Any modification, stay, vacation or amendment to the DIP Orders to which the DIP Lender has not consented;

    (b)    A priority claim or administrative expense or unsecured claim against the Borrower (now existing or hereafter arising or any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c) (subject in all respects to Paragraph 30 hereof in the case of the Prepetition Lender and/or the Prepetition Collateral), 507(a), 507(b), 546(c), 546(d), 726 or 1114 of the Bankruptcy Code) equal or superior to the priority claim of the DIP Lender in respect of the DIP Obligations, except with respect to the Carve Out;

    (c)    Any Lien on any DIP Collateral or Prepetition Collateral having a priority equal or superior to the Lien securing the DIP Obligations or Prepetition Obligations, except (a) with respect to the Carve Out, (b) for the Permitted Prior Liens, or (c) the rights granted to the DIP Lender herein or the DIP Financing Agreements;

    (d)    Any order which authorizes the return of any of the Borrower's property pursuant to section 546(h) of the Bankruptcy Code; or

    (e)    Any order which authorizes the payment of any Indebtedness (other than Indebtedness reflected in the Approved Budget, and other Indebtedness approved by the DIP Lender, in each case incurred prior to the Petition Date or the grant of "adequate protection" (whether payment in cash or

transfer of property) with respect to any such Indebtedness which is secured by a Lien other than as set forth in the DIP Orders).

The Prepetition Lender shall be provided with not less than three (3) business days prior notice, including the opportunity to object, of the entry in the Chapter 11 Case, or in any Successor Case, any order which authorizes any of the foregoing relief.

### D.   Restrictions on Disposition of Collateral.

48.   The Debtor shall not do the following:

(a)   sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the DIP Lender, required under the DIP Financing Agreements (and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender, or an order of this Court), except for the following:

   (i)   sales of the Debtor's Inventory in the ordinary course of business,

   (ii)   as part of the disposition of assets as contemplated in the Sale Order Motion, or

   (iii)   except as otherwise provided for in the DIP Financing Agreements and this Interim Order and approved by the Court, or

(b)   assume, reject, or assign any Lease without the prior consultation with the DIP Lender, except as contemplated in the Sale Order Motion, a Plan, or as otherwise provided for in the DIP Financing Agreements.

The Prepetition Lender shall be provided with not less than three (3) business days prior notice, including the opportunity to object, before any of the foregoing occurs.

### VIII.   OTHER RIGHTS AND OBLIGATIONS

### A.   Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order.

49.   Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter

modified, amended, or vacated by a subsequent order of this or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and, no such appeal, modification, amendment, or vacation shall affect the validity and enforceability of any advances made hereunder or the Liens or priority authorized or created hereby.

50.    Notwithstanding any such modification, amendment, or vacation, any claim granted to the DIP Lender and/or the Prepetition Lender hereunder arising prior to the effective date of such modification, amendment, or vacation of any DIP Protections granted to the DIP Lender or any protections granted to the Prepetition Lender shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender and the Prepetition Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP Protections and any protections granted to the Prepetition Lender granted herein, with respect to any such claim. Since the loans made pursuant to the DIP Facility, and the Prepetition Lender's consent to the use of Cash Collateral, are made in reliance on this Interim Order, the obligations owed the DIP Lender and the Prepetition Lender prior to the effective date of any stay, modification, or vacation of this Interim Order shall not, as a result of any subsequent order in the Chapter 11 Case or in any Successor Case, be subordinated, lose their Lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the Liens and claims granted to the DIP Lender or the Prepetition Lender under this Interim Order and/or the DIP Financing Agreements.

**B.    DIP Lender Expenses.**

51.    As provided in the DIP Financing Agreements, and notwithstanding any line item estimates appearing in the Budget, all reasonable out-of-pocket costs and expenses of the DIP Lender in connection with the DIP Financing Agreements, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and

disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of pocket expenses will be paid by the Debtor, whether or not the transactions contemplated hereby are consummated. Payment of such fees shall not be subject to allowance by the Court. The DIP Lender shall provide copies of any reasonably detailed invoice (redacted as may be appropriate) received by it to the Debtor, the Prepetition Lender, and counsel for the Committee (hereinafter "*Lender Expense Notice Parties*"). Any Lender Expense Notice Party shall have ten (10) days after submission of such invoice by the DIP Lender to assert an objection to payment of the amounts sought in the subject invoice. Provided no objection has been raised by any such Lender Expense Notice Party(ies) within the time period provided for herein, the DIP Lender shall be authorized without further order of the Court to pay such invoice by making an advance in like amount under the DIP Facility Agreements. In the event a Lender Expense Notice Party(ies) asserts an objection has within the time period provided for herein, the DIP Lender shall be authorized without further order of the Court to pay the undisputed portion of such invoice by making an advance in like amount under the DIP Facility Agreements, and any dispute with regard to amounts objected to shall be resolved by the Court; *provided, however*, the Debtor may seek a determination by the Court whether such fees and expenses are reasonable. Under no circumstances shall professionals for the DIP Lender be required to comply with the United States Trustee fee guidelines; *provided, however*, the Debtor shall provide to the Office of the United States Trustee a copy of any invoices for professional fees and expenses provided to the Debtor during the pendency of the Debtor's Chapter 11 Case (redacted as necessary to preserve confidential communication and the attorney/client privilege).

C.    **Binding Effect**.

52.    The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender, the Prepetition Lender, the Debtor, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estates of the Debtor), any Committee(s) (subject to the provisions of Paragraph 28 above), whether in the Chapter 11 Case, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case.

D.    **No Third Party Rights**.

53.    Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

E.    **No Marshaling**.

54.    Neither the DIP Lender nor the Prepetition Lender shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

F.    **Section 552(b) of the Bankruptcy Code.**

55.    The DIP Lender and the Prepetition Lender each shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the Debtor shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the DIP Lender or the Prepetition Lender with respect to proceeds, product, offspring or profits of any of the DIP Collateral or the Prepetition Collateral, as applicable.

G.    **Amendments**.

56.    The Debtor and the DIP Lender may amend, modify, supplement, or waive any provision of the DIP Financing Agreements without further approval of the Court

unless such amendment, modification, supplement, or waiver (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the DIP Commitments, or (iii) changes the maturity date of the DIP Facility, in which event, each such waiver, modification, or amendment shall not be effective unless set forth in writing, signed by on behalf of the Debtor and the DIP Lender (after having obtained the approval of the DIP Lender as provided in the DIP Financing Agreements) and approved by the Court; *provided that* the Prepetition Lender shall be provided with not less than three (3) business days prior notice, including the opportunity to object, to any such amendment, modification, supplement, or waiver of any material provision of the DIP Financing Agreements.

     **H.**    **Survival of Interim Order**.

     57.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:

     (a)    confirming any Plan in the Chapter 11 Case,

     (b)    converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code,

     (c)    to the extent authorized by applicable law, dismissing the Chapter 11 Case,

     (d)    withdrawing of the reference of the Chapter 11 Case from this Court, or

     (e)    providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case in this Court.

     58.    The terms and provisions of this Interim Order including the DIP Protections granted pursuant to this Interim Order and the DIP Financing Agreements and any protections granted the Prepetition Lender shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections and protections for the Prepetition Lender shall maintain their priority as provided by this Interim Order until all of the DIP Obligations of the

Debtor to the DIP Lender pursuant to the DIP Financing Agreements and the Prepetition Lender pursuant to the Prepetition Financing Documents have been irrevocably paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility or the Prepetition Financing Documents which survive such discharge by their terms).

**I.      Inconsistency**.

59.      In the event of any inconsistency between the terms and conditions of the DIP Financing Agreements and of this Interim Order, the provisions of this Interim Order shall govern and control.

**J.      Enforceability**.

60.      This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

**K.      Objections Overruled**.

61.      All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

**L.      Waiver of Any Applicable Stay**.

62.      Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

**M.      Proofs of Claim.**

63.      The Prepetition Lender and the DIP Lender will not be required to file proofs of claim in the Chapter 11 Case or in any Successor Case.

**N.**    **Headings.**

64.    The headings in this Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

**O.**    **Retention of Jurisdiction**.

65.    The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

**IX.**    **FINAL HEARING.**

66.    **The final hearing ("*Final Hearing*") on the Motion shall be heard before this Court on _____ __, 2013 at ___:___ __.m. (Prevailing Eastern Time).**

67.    If no objections to the relief sought at the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing will be held, and a separate Final Order may be presented jointly by the Debtor and by the DIP Lender and entered by this Court.

68.    Any party in interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file same with the Court (with a courtesy copy to chambers) and serve (so as to be received) such objection no later than _____ __, 2013 at __:__ _.m. (Prevailing Eastern Time) on the following parties:

[Remainder of Page Intentionally Left Blank]

| | |
|---|---|
| ***Debtor***<br>iGPS Company LLC<br>Landmark Center Two<br>225 E. Robinson Street<br>Orlando, FL 32801<br>Attn: Gary B. Glass, Senior Vice President &<br>General Counsel<br>E-Mail: GGlass@igps.net | ***Office of the United States. Trustee***<br>844 King Street<br>Suite 2207<br>Wilmington, DE 19801 |
| ***Counsel for the Debtor***<br>White & Case LLP<br>Southeast Financial Center, Suite 4900<br>200 South Biscayne Boulevard<br>Miami, Florida 33131-2352<br>Attn:    John K. Cunningham, Esq.<br>          Richard S. Kebrdle, Esq.<br>E-mail: jcunningham@whitecase.com<br>          rkebrdle@whitecase.com | ***Counsel for the Prepetition Lender***<br>DLA Piper LLP (US)<br>Southeast Financial Center, Suite 2500<br>200 South Biscayne Boulevard<br>Miami, Florida 33131-2352<br>Attn: Craig V. Rasile, Esq.<br>E-mail: craig.rasile@dlapiper.com<br><br>-and-<br><br>Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705<br>Attn: Laura Davis Jones, Esq.<br>          Ira Kharasch, Esq.<br>E-mail: ljones@pszjlaw.com<br>          ikharasch@pszjlaw.com |
| ***Counsel for the DIP Lender***<br>Riemer & Braunstein LLP<br>Three Center Plaza,<br>Boston, Massachusetts 02108<br>Attn: Donald E. Rothman, Esq.<br>E-mail: drothman@riemerlaw.com<br><br>-and-<br><br>Womble Carlyle Sandridge & Rice, LLP<br>Steven K. Kortanek Esq.<br>222 Delaware Avenue, Suite 1501<br>Wilmington DE 19801<br>(skortanek@wcsr.com) | |

Dated: June 5, 2013
      Wilmington, Delaware


                                            _____

                                            UNITED STATES BANKRUPTCY JUDGE

THE FOREGOING ORDER IS
HEREBY CONSENTED TO:


IGPS LOGISTICS LLC,
A Delaware limited liability company,
As Prepetition Lender


By: _____
      Name:
      Its: