# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| iGPS COMPANY LLC, | Case No. 13-11459 (    ) |
| Debtor. | |
| | Re: Docket No. ___ |

**ORDER (A) APPROVING THE AGREEMENT FOR THE SALE AND PURCHASE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING AND APPROVING THE SALE OF ASSETS TO IGPS LOGISTICS LLC FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (C) GRANTING RELATED RELIEF**

Upon the motion (the "Sale Motion") filed by iGPS Company LLC ("iGPS"), as the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), for entry of an order (the "Sale Order") pursuant to sections 105 and 363 of the Bankruptcy Code,[1] Bankruptcy Rules 2002(a)(2), 6004 and 9008 and Local Rules 2002-1, 6004-1 and 9006-1 (a) approving the Asset Purchase Agreement, substantially in the form attached hereto as Exhibit "1", by and between Seller and Purchaser, pursuant to which Seller has agreed, among other things, to sell the Purchased Assets to Purchaser (the "Asset Purchase Agreement"); (b) authorizing and approving the sale by Seller of the Purchased Assets free and clear of all liens, claims, encumbrances and interests other than certain Assumed Liabilities and Permitted Liens; and (iii) granting related relief; and no previous motion for similar relief having been made; and it appearing that this Court has jurisdiction over this matter; and it appearing that due notice of the Sale Motion as set forth therein and in the related Bid Procedures Order (as defined below) is sufficient under the circumstances, and that no other or further notice need be

---

[1]    Capitalized terms used herein that are not otherwise defined in this Sale Order shall have the meaning ascribed to such terms in the Asset Purchase Agreement, or, if not otherwise defined in the Asset Purchase Agreement or this Order, the meanings ascribed to such terms in the Sale Motion.

provided; and it further appearing that the relief requested in the Sale Motion is in the best interests of the Debtor and its estate and creditors; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

NOW, THEREFORE, THE COURT HEREBY FINDS THAT:

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District and this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Notice of the Sale Motion having been given as described above, is timely, adequate, sufficient and proper under the circumstances.

C.      On June __, 2013, the Court entered its Order (A) Authorizing and Approving Bid Procedures to be Employed in Connection with the Sale of Substantially All of the Assets of the Debtor; (B) Approving Certain Bid Protections; (C) Scheduling an Auction and Sale Hearing; (D) Authorizing and Approving Assignment Procedures to be Employed in Connection with the Identification and Assumption of Certain Contracts, Leases and Intellectual Property Rights; and (E) Approving the Manner and Form of Notice of the Auction, Sale Hearing and Assignment Procedures [Docket No. ___] (the "Bid Procedures Order").

D.      The Seller and its agent, Houlihan Lokey, LLC ("Houlihan"), diligently and in good faith marketed the Purchased Assets that are the subject of the Asset Purchase Agreement to secure the highest and best offer therefor by, inter alia, delivering marketing materials to potential purchasers and providing each of the potential purchasers with the opportunity to conduct extensive due diligence and bid for the Purchased Assets in accordance with the Bid Procedures approved by the Court.  In addition, the Debtor delivered the Sale Notice and the Bid Procedures Order to each of the entities set forth in Paragraph 24 of the Sale Motion, including

those entities that have expressed to the Debtor an interest in purchasing Seller's assets. The terms and conditions set forth in the Asset Purchase Agreement, and the transactions contemplated thereby, represent fair and reasonable terms and conditions, including the amount of the purchase price, and constitute the highest and best offer obtainable for the Purchased Assets and are fair and adequate.

      E.     An auction was scheduled to be held on July 1, 2013 (the "Auction") in accordance with the Bid Procedures Order. Having considered the bids submitted prior to and during the Auction, or absence thereof, the Seller selected the Purchaser as the winning bidder.

      F.     Proper, timely, adequate and sufficient notice of the Bid Procedures, the Auction, the Sale Motion and the hearing on the foregoing has been provided in accordance with sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9008, and no other or further notice is required.

      G.     A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein and the rights of third parties to submit higher or otherwise better offers for all or any portion of the Purchased Assets in accordance with the Bid Procedures approved by this Court have been afforded to all interested persons and entities.

      H.     The Bid Procedures afforded a full, fair and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Purchased Assets.

      I.     The Debtor and Purchaser have complied with the Bid Procedures in all respects. The bidding and Auction process was non-collusive, fair and reasonable, conducted in good faith and resulted in the Seller obtaining the highest available value for the Purchased Assets.

      J.     The Asset Purchase Agreement was negotiated, proposed, and entered into by the Seller and the Purchaser without collusion, in good faith and from arm's-length bargaining positions. Neither the Seller nor the Purchaser has engaged in any conduct that would cause or

permit the Asset Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. Purchaser is not an "insider" or "affiliate" of the Debtor (as such terms are defined in the Bankruptcy Code). Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby in consummating the transactions contemplated by the Asset Purchase Agreement.

K.      The consideration to be provided by Purchaser for the Purchased Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) represents the highest and best offer for the Purchased Assets, and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession and the District of Columbia.

L.      The Purchased Assets constitute property of Seller's estate within the meaning of section 541(a) of the Bankruptcy Code. Except as otherwise set forth in the Asset Purchase Agreement, Seller has full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby; and no further consents or approvals are required for Seller to consummate the transactions contemplated by the Asset Purchase Agreement.

M.      With respect to any and all entities asserting any options, pledges, security interests, claims, equities, reservations, third party rights, rights of first refusal, voting trusts or similar arrangements, liens, trusts or deemed trusts (whether contractual, statutory or otherwise), charges, including court-ordered charges, or other encumbrances or restrictions on or conditions to transfer or assignment of any kind (including, without limitation to the generality of the foregoing, restrictions or conditions on or to the transfer, assignment or renewal of licenses, permits registrations and authorizations or approvals of or with respect to governmental units and instrumentalities), whether direct or indirect, absolute or contingent, matured or unmatured,

liquidated or unliquidated, perfected, registered or filed, secured or unsecured, on or against the Purchased Assets owned by Seller (collectively, the "Encumbrances"), either (i) such entity has consented to the sale and transfer, license and assignment, as applicable, free and clear of its Encumbrance, with such Encumbrance to attach to the proceeds of such sale and transfer, license and assignment, as applicable, respectively, (ii) applicable nonbankruptcy law permits the sale of the Purchased Assets free and clear of such Encumbrance, (iii) such Encumbrance is in bona fide dispute, or (iv) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Encumbrance, such that the conditions of section 363(f) of the Bankruptcy Code have been met.

N.    Upon the Closing of the Asset Purchase Agreement, the sale and transfer of the Purchased Assets to the Purchaser shall be a legal, valid and effective transfer of the Purchased Assets to the Purchaser, and shall vest in the Purchaser all right, title and interest in the Purchased Assets in accordance with the terms and conditions of the Asset Purchase Agreement free and clear of any Encumbrances (other than Assumed Liabilities and Permitted Liens), including, without limitation, any claims pursuant to any successor or successor-in-interest liability theory, under, and to the maximum extent permitted by, sections 105(a) and 363(f) of the Bankruptcy Code.

O.    Upon the Closing of the Asset Purchase Agreement, the assignment of Seller's interests in that certain Third Amended and Restated Manufacturing Supply Agreement, dated July 9, 2008, by and between Seller and Schoeller Arca Systems N.V. and Schoeller Arca Systems Inc. (the "SAS Rights") shall be a legal, valid and effective transfer of the SAS Rights and shall vest in the Purchaser all right, title and interest in the SAS Rights to the extent set forth in the Asset Purchase Agreement.

P.     Except as expressly set forth in the Asset Purchase Agreement with respect to Assumed Liabilities and Permitted Liens, the Purchaser shall not have any liability for any (i) obligation of the Seller, or (ii) any claim against the Seller related to the Purchased Assets by reason of the transfer of such Purchased Assets to the Purchaser. The Purchaser not shall be deemed, as a result of any action taken in connection with the purchase of the Purchased Assets or otherwise, to: (1) be a successor to the Seller for any purposes (other than with respect to the Assumed Liabilities and any obligations arising under the Assumed Contracts and Assumed Leases from and after the Closing); or (2) have, de facto or otherwise, merged with or into the Seller. The Purchaser is not acquiring or assuming any liability, warranty or other obligation of the Seller, except as expressly set forth in the Asset Purchase Agreement or any of the Assumed Contracts and Assumed Leases.

Q.     The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Purchaser or its respective assignees, the assumption, assignment and sale of the Assumed Agreements to the Purchaser or its respective assignees, and the assumption of the Assumed Liabilities by the Purchaser or its respective assignees were not, except as otherwise provided in the Asset Purchase Agreement with respect to the Assumed Liabilities and Permitted Liens, free and clear of all Encumbrances of any kind of nature whatsoever, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities and Permitted Liens), be liable for any of such Encumbrances or other liabilities (such other liabilities or obligations being referred to collectively as the "Successor Liabilities"), including, but not limited to, Liens or Successor Liabilities in respect of the following (the following being referred to collectively as the "Successor Liability Documents, Statutes and Claims"): (1) any employment or labor

agreements; (2) all deeds of trust and security interests; (3) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtor; (4) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Notification Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Budget Reconciliation Act of 1986, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, (l) state workers' compensation laws or (m) any other state or federal benefits or claims relating to any employment with the Debtor or any predecessors; (5) any products liability or similar claims, whether pursuant to any state or federal laws or otherwise; (6) except as provided in paragraph 23 below, reclamation, environmental or other claims or liens arising from conditions first existing on or prior to the applicable Closing (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statute; (7) any bulk sales or similar law; (8) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (9) any theory of antitrust; and (10) any common law doctrine of de facto merger or successor or transfers liability, successor-in-interest liability theory or any other theory of successor liability.

R.    The Purchaser does not constitute a successor or assignee of the Seller for any purpose because: (1) except as otherwise set forth in the Asset Purchase Agreement, The Purchaser is not expressly or impliedly agreeing to assume any of Seller's liabilities; (2) the transactions contemplated by the Asset Purchase Agreement do not amount to a consolidation, merger or a de facto merger of the Seller and the Purchaser; (3) the Purchaser is not merely a continuation of the Seller and there is no continuity between the Purchaser and the Seller; and (4) the transactions contemplated by the Asset Purchase Agreement are not being entered into fraudulently or in order to escape liability from the Seller's debts.

S.    All findings of fact and conclusions of law announced by the Court at the hearing in relation to the Sale Motion are hereby incorporated herein.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The Sale Motion is granted on the terms set forth herein.

2.    All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or by representation by the Debtor in a separate pleading, and all reservations of rights included therein, are hereby denied and overruled with prejudice.

3.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Seller to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Asset Purchase Agreement and this Order.

4.    The Asset Purchase Agreement is hereby approved in all respects, and shall be deemed in full force and effect, binding and benefiting the Debtor and Purchaser.

5.     The Seller is authorized and directed to implement and consummate all of the transactions contemplated by the Asset Purchase Agreement (the "Sale"), including, without limitation, to sell the Purchased Assets to Purchaser, to assign the SAS Rights to Purchaser, and, subject to further Order of this Court, to assume and assign to Purchaser the Assumed Contracts and Assumed Leases, all on the terms and conditions of the Asset Purchase Agreement, for the purchase price set forth in, and determined in accordance with, the Asset Purchase Agreement. The Seller is authorized and hereby directed to deliver special warranty deeds, bills of sale, assignments and other such documentation that may be necessary or requested by the Purchaser in accordance with the terms of the Asset Purchase Agreement to evidence the transfers required by the Asset Purchase Agreement.

6.     Except as otherwise set forth in paragraph 23, upon the Closing of the Sale, the Purchaser shall take title to and possession of the Purchased Assets subject only to the applicable Permitted Liens.  With the exception of such Permitted Liens, pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets shall be free and clear of any and all Encumbrances, including, without limitation, any claims pursuant to any Successor Liability theory or any of the Successor Liability Documents, Statutes and Claims; provided, however, that the Purchaser shall not be relieved of liability with respect to the Assumed Liabilities, including any obligations accruing under the Assumed Contracts and Assumed Leases from and after the Closing of the Sale.  All Encumbrances shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect as presently exists with respect to such Purchased Assets immediately prior to the Closing of the Sale.  Upon entry of this Order, the security interests granted in the proceeds of the Sale hereby shall be properly perfected without the need for further filings or further documentation.

7.    Effective upon the Closing Date, and except with respect to Assumed Liabilities and Permitted Liens, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the relevant Purchased Assets, with respect to any (a) Encumbrance arising under, out of, in connection with or in any way relating to the Seller, the Purchased Assets or the operation of such Purchased Assets prior to the Closing of the sale of the Purchased Assets or (b) Successor Liability, including, without limitation, the following actions:

   a.    Commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties.

   b.    Enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties;

   c.    Creating, perfecting or enforcing any lien or other Encumbrance against the Purchaser, its successors, assets or properties;

   d.    Asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Purchaser or its successors;

   e.    Commencing or continuing any action, in any manner or place, that interferes with the Purchaser's rights in the Purchased Assets, does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or

   f.    Revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

8.    Without limiting the generality of the foregoing, except as otherwise specifically set forth in the Asset Purchase Agreement, the Purchaser shall not assume or be obligated to pay, perform or otherwise discharge any workers' compensation debts (except as provided in Section 2.5(d) of the Asset Purchase Agreement), obligations and liabilities of the Seller arising pursuant to state law or otherwise.  This Order is intended to be all inclusive and shall encompass, but not be limited to, workers' compensation claims or suits of any type, whether now known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination or other incidents, acts or injuries prior to the Closing Date, including, but not limited to, any and all workers' compensation claims filed or to be filed, or reopenings of those claims, by or on behalf of any of the Seller's current or former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments, or other obligations of any nature whatsoever of the Seller relating in any way to workers' compensation liability.

9.    In addition, without limiting the generality of the foregoing, except as otherwise specifically set forth in the Asset Purchase Agreement, the Purchaser shall not assume or be obligated to pay, perform or otherwise discharge any debts, obligations and liabilities of the Seller arising pursuant to the Seller's ownership or operation of its facilities prior to the date of the applicable Closing, including, but not limited to, any Successor Liabilities in respect of the Successor Liability Documents, Statutes and Claims or otherwise.  The Purchaser has given substantial consideration under the Asset Purchase Agreement for the benefit of the holders of Encumbrances.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser,

which releases shall be deemed to have been given in favor of the Purchaser by all holders of the Encumbrances against the Seller or the Purchased Assets.

10.    If not already satisfied directly by Purchaser at Closing, the proceeds of the Purchased Assets received by Seller under the Asset Purchase Agreement shall be applied first to satisfy in full all amounts then outstanding under the DIP Facility, including, without limitation, all accrued but unpaid interest and other charges.

11.    Any amounts that become payable by the Seller to the Purchaser pursuant to the Asset Purchase Agreement (and related agreements executed in connection therewith) as of the Closing Date (a) shall constitute allowed administrative expenses of the Seller's estates under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code, and (b) shall be paid by the Seller in the time and manner provided for in the Asset Purchase Agreement or the applicable related agreement.

12.    All entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets of the Purchaser or its assignee at the Closing.

13.    The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

14.    A Certified Copy of this Order may be filed with the appropriate Clerk and/or recorded with the appropriate recorder to act to cancel the liens and other Encumbrances of record with respect to the Purchased Assets, except the Permitted Liens.

15.    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Asset Purchase Agreement and the provisions of this Order.

16.     This Order shall be binding in all respects upon the Debtor, its estate, all creditors of, and holders of equity interests in, the Debtor (whether known or unknown), any holders of Encumbrances on the Purchased Assets, all non-Debtor parties to the Assumed Contracts and Assumed Leases, all successors and assigns of the Purchaser, the Debtor and its affiliates, the Purchased Assets and any trustees, if any, subsequently appointed in the Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtor's cases. This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtor, its estate, its creditors, Purchaser, and each of their respective successors and assigns. The Asset Purchase Agreement and any related agreements shall not be subject to rejection.

17.     This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, and any related agreement.

18.     Nothing contained in any chapter 11 plan confirmed in this case or the order confirming any such plan or in any other order in this case (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order, including, but not limited to, (a) the obligation of the Seller to pay any amounts due to the

Purchaser pursuant to the Asset Purchase Agreement or any transactions contemplated thereby in the time and manner provided in the Asset Purchase Agreement and without further order of this Court and (b) the status of any such payments as administrative priority expenses of the Seller's estate pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

19.    This Order constitutes authorization under all applicable jurisdictions' versions of the Uniform Commercial Code for the Purchaser to file UCC termination statements with respect to all security interests in or liens on the applicable Purchased Assets.

20.    The failure specifically to include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

21.    The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Seller's estate.

22.    Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, to the extent any of the Purchased Assets are determined to be an interest in a consumer credit transaction subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations), the Purchaser shall remain subject to the same claims and defenses that are related to such consumer credit transaction or such consumer credit contract to the same extent as the Purchaser would be subject to such claims and defenses of the consumer if such interest had been purchased at a sale not under section 363 of the Bankruptcy Code, as provided for in section 363(o) of the Bankruptcy Code.

23.     Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.  Notwithstanding the foregoing sentence, nothing in this Order shall be interpreted to deem the Purchaser as the successor to the Seller under any state law successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to entry of this Order or for liabilities relating to off-site disposal of wastes by the Debtor prior to the Closing of the Sale.

24.     This Court shall retain jurisdiction over the transactions contemplated in the Asset Purchase Agreement for purposes of enforcing the provisions of this Order and the Asset Purchase Agreement.

Dated:  Wilmington, Delaware
        _____, 2013

        _____
        UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

[Asset Purchase Agreement]