Es fIN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>iGPS COMPANY LLC,[1]<br><br>　　　　　　Debtor. | ) Chapter 11<br>)<br>) Case No. 13-11459 (KG)<br>)<br>)<br>)<br>) Objection Deadline: June 24, 2013 at 4:00 p.m. (ET)<br>) Hearing Date: July 1, 2013 at 10:00 a.m. (ET) |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11
U.S.C. §§ 105(a) AND 363(b) (I) AUTHORIZING THE DEBTOR TO RETAIN
WINTER HARBOR LLC AND (II) APPROVING THE DESIGNATION OF
SHAUN MARTIN AS DEBTOR'S CHIEF RESTRUCTURING OFFICER**

iGPS Company LLC, as the debtor and debtor in possession in the above-captioned chapter 11 case ("iGPS" or the "Debtor"), hereby submits this motion (the "Motion") pursuant to sections 105 and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order (i) authorizing the Debtor to retain Winter Harbor LLC ("Winter Harbor") nunc pro tunc to the Petition Date (as defined below) pursuant to the terms set forth in that certain engagement letter between the Debtor and Winter Harbor dated as of April 23, 2013 (the "Engagement Letter"), a copy of which is attached hereto as Exhibit "A", and (ii) approving the designation of Shaun Martin as the Debtor's Chief Restructuring Officer ("CRO"). In support of this Motion, the Debtor submits the Declaration of Shaun Martin (the "Martin Declaration"), attached hereto as Exhibit "B", and respectfully states as follows:

---

[1] The last four digits of iGPS Company LLC's federal tax identification number are 6297. The location of iGPS Company LLC's corporate headquarters and the service address is 225 E. Robinson Street, Suite 200, Orlando, Florida.

## Background

### A. General Background

1. On June 4, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. To date, no creditors' committee has been appointed in this case by the Office of the United States Trustee. No trustee or examiner has been requested or appointed in the Debtor's chapter 11 case as of the date hereof.

3. Additional background facts on the Debtor, including an overview of the Debtor's business, information on the Debtor's corporate structure, information on the Debtor's debt structure and information on the events leading up to the Debtor's bankruptcy case is contained in the Declaration of Walter Myers in Support of First Day Motions and Applications [Docket No. 12].

### B. Background Specific to the Motion

4. Winter Harbor's professionals have a wealth of experience in providing corporate restructuring services. On November 9, 2012, on the basis of the qualifications of Winter Harbor's professionals, the Debtor engaged Winter Harbor to provide financial advisory and consulting services to the Debtor and shortly thereafter retroactively expanded the scope of the engagement. On April 23, 2013, the Debtor entered into an agreement to retain Winter Harbor to provide CRO services (the "Engagement Letter"), a copy of which is attached hereto as Exhibit "A". The Engagement Letter superseded any prior agreement between the Debtor and Winter Harbor. Since the execution of the Engagement Letter, Winter Harbor has developed a significant amount of institutional knowledge regarding the Debtor's operations, finances and systems. On the

2

basis of this experience and knowledge, Winter Harbor is uniquely positioned to provide the services described in the Engagement Letter and herein.

5.  The Debtor's Board of Managers has authorized the Debtor's officers to retain and employ all assistance which they may deem necessary or proper with a view to the successful prosecution of the chapter 11 case, and the Debtor views the retention of Winter Harbor to provide Mr. Martin as CRO, as well as the additional personnel set forth herein (the "Additional Personnel"), to be necessary and proper.

6.  The Debtor has selected Mr. Martin as CRO based upon Mr. Martin's (i) extensive experience in matters involving complex financial restructurings and sales of debtors' assets and (ii) excellent reputation for the services rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. He is an expert in leading both CRO and interim management assignments for debtor clients as well as advisory engagements for both debtor and creditor clients.

7.  In providing prepetition services to the Debtor in connection with these matters, Mr. Martin has taken an active role in spearheading the Debtor's efforts to prepare for its chapter 11 filing, including negotiating and obtaining postpetition financing and communicating with its various constituencies. Accordingly, Mr. Martin has developed significant relevant experience and expertise regarding the Debtor that will assist it in providing effective and efficient services in this case. The Additional Personnel also have significant relevant experience and expertise that will provide the Debtor with effective and efficient services.

**C. Scope of Services**

8.  As set forth in the Engagement Letter, Winter Harbor has been providing and will continue to provide the following services, among others:

- Prepare data and analyses necessary to meet the requirements and requests of various parties related to the Debtor's chapter 11 case.

3

- In the event the Company files for relief under Chapter 11 of the Bankruptcy Code, compile and format data and analyses necessary to meet the financial reporting requirements mandated by the Bankruptcy Code and the Office of the United States Trustee.

- Manage the Debtor's cash, and prepare ongoing forecasting of the cash flows and claim pools and estimate recoveries to the secured and general unsecured creditors.

- Manage analyses and reconciliation of claims against the Debtor and bankruptcy avoidance actions.

- Prepare for court hearings, for the argument of motions and provide expert testimony as required.

- Prepare analyses in support of, and preparation of a chapter 11 plan.

- Manage the Debtor's negotiations with its creditor constituencies, including negotiations relating to the Debtor's chapter 11 plan.

- Take any and all actions necessary to preserve value.

- Advise the board of managers on restructuring matters.

- The CRO and any Additional Personnel shall provide such other services as requested or directed by the board.

### D. Winter Harbor's Disinterestedness

9. Although the Debtor submits that the retention of Winter Harbor is not governed by section 327 of the Bankruptcy Code, the Debtor attaches the Martin Declaration, which discloses, among other things, any relationship that Winter Harbor or Mr. Martin has with the Debtor, its significant creditors, or other significant parties in interest known to Winter Harbor. If any new material facts or relationships are discovered or arise, Mr. Martin will provide the Court with a supplemental declaration.

10. Winter Harbor has informed the Debtor that, except as may be set forth in the Martin Declaration, it (i) has no connection with the Debtor, its creditors or other parties-in-interest in the chapter 11 case; (ii) does not hold any interest adverse to the Debtor's estate; and (iii) believes it is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.

11. Finally, Winter Harbor has agreed not to share with any person or firm the compensation to be paid for its services rendered in connection with the chapter 11 case.

### E. Terms of Retention

12. Pursuant to the terms set forth in the Engagement Letter, the Debtor will compensate Winter Harbor as follows:[2]

a) <u>Compensation</u>: The Debtor has agreed to compensate Winter Harbor at their standard hourly rates during the pendency of the chapter 11 case. The billing rates for professionals who may be assigned to this engagement are as follows:

| | | | | |
|---|---|---|---|---|
| Managing Director | $495 | to | $595 | per hour |
| Director | $395 | to | $450 | per hour |
| Manager | $250 | to | $325 | per hour |
| Associate | $175 | to | $225 | per hour |
| Clerical/Administrative | $75 | to | $125 | per hour |

Winter Harbor anticipates that the staffing of the Debtor's engagement will be as follows: Shaun Martin ($495/hour); Eric Glassman ($395/Hour); Barak Tulin ($395/Hour).

b) <u>Reimbursement of Expenses</u>: Out of pocket expenses (including transportation, lodging, meals, communications, supplies, copying, etc.) will be billed at the actual amounts incurred. Out of pocket expenses may also include reasonable fees and expenses of attorneys consulted or engaged by Winter Harbor (engaged upon prior written notice by Winter Harbor to Debtor) to assist it with matters under the Engagement Letter, such as retention applications, fee applications and collection of fees under the Engagement Letter.

c) <u>Indemnification</u>: The indemnification provisions of the Engagement Letter are subject to the following supplemental provisions:

The Debtor will indemnify Winter Harbor, its principals, employees and affiliates in the event of certain losses, subject to the following limitations and notwithstanding the provisions of the Engagement Letter:

(i) Winter Harbor shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court;

---

[2] To the extent there is any inconsistency in connection with the summary of the principal terms of the Engagement Letter set forth in this Motion and the principal terms as set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

5

(ii) Notwithstanding any provisions of the Engagement Letter to the contrary, the Debtor shall have no obligation to indemnify Winter Harbor, its affiliates, and their respective shareholders, members, managers, employees, agents, representatives, and subcontractors, or provide contribution or reimbursement to Winter Harbor for any claim or expense that is (i) judicially determined (the determination having become final) to have arisen from Winter Harbor's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtor alleges the breach of Winter Harbor's contractual obligations, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., et al., 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination as to Winter Harbor's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which Winter Harbor should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter, as modified by the attached proposed order of this Court;

(iii) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing this chapter 11 case, Winter Harbor believes that it is entitled to the payment of any amount by the Debtor on account of Debtor's indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by the attached proposed order), including, without limitation, the advancement of defense costs, Winter Harbor must file an application therefor in this Court, and the Debtor may not pay any such amounts to Winter Harbor before the entry of an order by this Court approving the payment. This subparagraph (c)(iii) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Winter Harbor for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Winter Harbor; and

(iv) Any limitation on liability or any amounts to be contributed by the parties under the terms of the Engagement Letter shall be eliminated.

13. Because Winter Harbor is not being employed as a professional under section 327 of the Bankruptcy Code, it will not be submitting fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, the Debtor intends that the fees and

expenses incurred by Winter Harbor in completion of its services under the Engagement Letter be treated as administrative expenses of the Debtor's chapter 11 estate and paid by the Debtor in the ordinary course of business. Winter Harbor will be entitled to be paid immediately upon invoicing the Debtor, but will file with the Court and provide notice to the U.S. Trustee and counsel for the Official Committee of Unsecured Creditors (the "Creditors' Committee), once appointed, reports of compensation and expenses on a monthly basis, as detailed in the order attached hereto as Exhibit "C". Additionally, Winter Harbor shall file with the Court, with copies to the U.S. Trustee and the Creditors' Committee, a report of staffing on the engagement for the previous month. Such reports shall include the names and functions filled of the individuals assigned. Such notice will provide a time period for objections as to compensation previously paid. All compensation previously paid and staffing will be subject to review by the Court in the event an objection is filed. The Debtor believes that Winter Harbor's fees and compensation as set forth herein are reasonable and justified under the circumstances.

F. **Fees and Expenses Paid Under the Initial Engagement Letter**

14. Within the ninety (90) days preceding the Petition Date Winter Harbor billed the Debtor and received payment as follows:

| Invoice Date | Dates of Service | Invoice Amount | Payment Date | Payment Amount | Retainer Balance |
|---|---|---|---|---|---|
| 3/4/2013 | 02/25 - 03/03 | $ 28,885.60 | 3/8/2013 | $ 28,885.60 | $ 25,000.00 |
| 3/11/2013 | 03/04 - 03/10 | $ 24,982.26 | 3/15/2013 | $ 24,982.26 | $ 25,000.00 |
| 3/11/2013 | Retainer | $ 25,000.00 | 3/15/2013 | $ 25,000.00 | $ 50,000.00 |
| 3/18/2013 | 03/11 - 03/17 | $ 27,075.08 | 3/23/2013 | $ 27,075.08 | $ 50,000.00 |
| 3/25/2013 | 03/18 - 03/24 | $ 73,838.61 | 3/29/2013 | $ 73,838.61 | $ 50,000.00 |
| 4/1/2013 | 03/25 - 03/31 | $ 37,453.39 | 4/3/2103 | $ 37,453.39 | $ 50,000.00 |
| 4/8/2013 | 04/01 - 04/07 | $ 51,321.62 | 4/12/2013 | $ 51,321.62 | $ 50,000.00 |
| 4/15/2013 | 04/08 - 04/14 | $ 53,723.64 | 4/16/2013 | $ 53,723.64 | $ 50,000.00 |
| 4/19/2013 | 04/15 - 04/19 | $ 72,381.62 | 4/19/2013 | $ 72,381.62 | $ 50,000.00 |
| 4/25/2013 | Retainer | $ 125,000.00 | 4/25/2013 | $ 125,000.00 | $ 175,000.00 |
| 4/29/2013 | 04/20 - 04/28 | $ 109,350.74 | 4/30/2013 | $ 109,350.74 | $ 175,000.00 |

7

| 5/6/2013 | 04/29 - 05/05 | $ 52,352.13 | 5/10/2013 | $ 52,952.13 | $ 175,000.00 |
|---|---|---|---|---|---|
| 5/13/2013 | 05/06 - 05/12 | $ 59,155.05 | 5/17/2013 | $ 59,155.05 | $ 175,000.00 |
| 5/20/2013 | 05/13 - 05/19 | $ 58,321.94 | 5/21/2013 | $ 58,321.94 | $ 175,000.00 |
| 5/28/2013 | 05/20 - 05/27 | $ 66,435.24 | 5/28/2013 | $ 66,435.24 | $ 175,000.00 |
| 6/3/2013 | 05/28 - 06/02 | $ 94,890.68 | 6/3/2013 | $ 94,890.68 | $ 175,000.00 |
| 6/4/2013 | 06/03 - 06/04 | $ 41,794.00 | Retainer Applied | $ 41,794.00 | $ 133,206.00 |

### G. Indemnification

15. Winter Harbor on the one hand and the Debtor on the other negotiated the terms and conditions of the Engagement Letter, including the provisions regarding indemnification of Winter Harbor, at arm's length and in good faith. The Debtor and Winter Harbor believe that the indemnification language, as subject to paragraph 12(c) herein, is customary and reasonable for similar engagements in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions. See, e.g., In re Tropicana Entm't., LLC, Case No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008); In re Sharper Image Corp., No. 08-10446 (KJC) (Bankr. D. Del Apr. 23, 2008); In re Leiner Health Prods., Inc., No. 08-10446 (KJC) (Bankr. D. Del. April 5, 2008); In re Friedman's Inc., No 08-10161 (CSS) (Bankr. D. Del. Jan. 28, 2008); In re Am. Home Mortg. Holdings, Inc., No. 07-11047 (CSS) (Bankr. D. Del Sept. 5, 2007); In re FLYi, Inc., Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006).

### Jurisdiction

16. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

MIAMI 973504

**Relief Requested**

17.     By this Motion, the Debtor is seeking to continue to employ Shaun Martin as CRO pursuant to sections 105(a) and 363(b) of the Bankruptcy Code in accordance with the terms of the Engagement Letter.

**Basis For Relief**

**The Debtor's Retention and Employment of Winter Harbor and Mr. Martin as CRO is Appropriate pursuant to Sections 105(a) and 363 of the Bankruptcy Code.**

18.     Based on the foregoing, the Debtor submits that the engagement of Winter Harbor to assist the Debtor during its chapter 11 case is essential to the success of the case.

19.     The Debtor seeks approval of the retention and employment of Winter Harbor, to provide Mr. Martin to serve as CRO, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Section 363 of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In order to do so, the debtor must articulate some business justification. See In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992) (holding that in reviewing a section 363(b) application, the court must find from the evidence presented before him, a good business reason to grant such application); see also In re Ionosphere Clubs, Inc., 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is a "good business reason").

20.     Further, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide additional authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." See 11 U.S.C. § 105(a); see also US. v. Energy Res. Co., 495 U.S. 545, 549 (1990); Adelphia Commc'ns Corp. v. Am. Channel (In re

Adelphia Commc'ns Corp.), 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process."); Gillman v. Cont'l Airlines (In re Cont'l Airlines), 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code.").

21. The retention of Winter Harbor and its professionals is a sound exercise of the Debtor's business judgment. As detailed herein, the Debtor selected Winter Harbor to provide its CRO because of Mr. Martin's experience and reputation for providing restructuring services in large, complex restructuring cases. Moreover, Winter Harbor has acquired significant knowledge of the Debtor and its business operations as a result of the extensive prepetition work performed on the Debtor's behalf, making Winter Harbor the obvious choice to provide the services detailed in the Engagement Letter. Thus, the retention of Winter Harbor is necessary and appropriate to provide such services.

22. Further, the Debtor believes that Winter Harbor's fee structure is fair and reasonable in light of the type of services being provided and compares favorably with the fee structures generally offered by firms of similar stature to Winter Harbor for comparable engagements. In addition, given the numerous issues Winter Harbor has addressed prior to the Petition Date and may need to address during the chapter 11 case, Winter Harbor's commitment to the variable level of time and effort necessary to address all such related issues as they arise, and the market prices for Winter Harbor's services for engagements of this nature in an out-of-court context, the Debtor believes that the Winter Harbor fee arrangement is fair and reasonable.

MIAMI 973504

23. Finally, the Debtor is not seeking to retain Winter Harbor as a professional under section 327 of the Bankruptcy Code. Accordingly, the Debtor submits there is no requirement that Winter Harbor be disinterested. However, to the best of the Debtor's knowledge, information and belief, Winter Harbor does not have any interest materially adverse to the Debtor's estate or any class of creditor or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, the Debtor, or for any other reason. Further, the Debtor understands that Winter Harbor believes it is disinterested because, to the best of Winter Harbor's knowledge, information and belief, Winter Harbor has no connection with the Debtor, its creditors or any other party-in-interest, except as disclosed in the Martin Declaration.

24. The retention of corporate officers is proper under section 363 of the Bankruptcy Code, and courts in this district have recognized that such retention is an appropriate exercise of a debtor's business judgment. See, e.g., In re School Specialty, Inc., Case No. 13-10125 (KJC) (Bankr. D. Del. Feb. 25, 2013); In re Vertis Holdings, Inc., Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); In re Filene's Basement, LLC, Case No. 11-13511 (KJC) (Bankr. D. Del. Jan. 24, 2012); In re Harry & David Holdings, Inc., Case No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011).

25. The Debtor submits that the employment of Winter Harbor is a sound exercise of its business judgment and satisfies section 363 of the Bankruptcy Code as Winter Harbor's services are necessary and essential to the Debtor's restructuring efforts. In addition to the specific knowledge they have acquired about the Debtor's businesses, Winter Harbor and its personnel have extensive experience providing management services to distressed companies.

MIAMI 973504

## **Notice**

26.     Notice of this Motion has been provided to the Office of the United States Trustee for the District of Delaware, counsel to the Purchaser, counsel to the DIP Lender, the Debtor's 30 largest unsecured creditors (including counsel if known) and all parties requesting notices pursuant to Bankruptcy Rule 2002.  The Debtor submits that no other or further notice need be provided.

27.     No previous motion for the relief sought herein has been made to this or any other court.

MIAMI 973504

WHEREFORE, the Debtor respectfully request this Court enter an order (a) authorizing the Debtor to engage Winter Harbor in accordance with this Motion; (b) appointing Shaun Martin as the CRO and (c) granting the Debtor such other and further relief as is just and proper.

Dated: June 10, 2013
       Wilmington, Delaware

                                 FOX ROTHSCHILD LLP

                                 By: _____
                                 Jeffrey M. Schlerf (No. 3047)
                                 John H. Strock (No. 4965)
                                 L. John Bird (No. 5310)
                                 Citizens Bank Center, Suite 1600
                                 919 North Market Street
                                 Wilmington, DE 19801
                                 Telephone: (302) 654-7444

                                         – and –

                                 John K. Cunningham (admitted *pro hac vice*)
                                 Richard S. Kebrdle (admitted *pro hac vice*)
                                 Kevin M. McGill (admitted *pro hac vice*)
                                 Fan B. He (admitted *pro hac vice*)
                                 WHITE & CASE LLP
                                 Southeast Financial Center
                                 200 South Biscayne Boulevard, 49th Floor
                                 Miami, Florida 33131
                                 Telephone: (305) 371-2700
                                 Facsimile: (305) 358-5744

                                 *Proposed Attorneys for the Debtor and*
                                 *Debtor in Possession*