## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| iGPS COMPANY LLC,[1] | ) | Case No. 13-11459 (KG) |
| | ) | |
| Debtor. | ) | |
| | ) | **Objection Deadline: June 24, 2013 at 4:00 p.m. (ET)** |
| | ) | **Hearing Date: July 1, 2013 at 10:00 a.m. (ET)** |

### DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO EMPLOY AND RETAIN HOULIHAN LOKEY CAPITAL, INC. AS INVESTMENT BANKER *NUNC PRO TUNC* TO THE PETITION DATE PURSUANT TO SECTIONS 327 AND 328 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2014 AND LOCAL RULE 2014-1 AND WAIVING CERTAIN REQUIREMENTS OF LOCAL RULE 2016-2

iGPS Company LLC, as the debtor and debtor in possession in the above-captioned chapter 11 case ("iGPS" or the "Debtor"), hereby submits this application (the "Application") pursuant to 11 U.S.C. §§ 327(a) and 328(a), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for authority to employ and retain Houlihan Lokey Capital, Inc. ("Houlihan") as Investment Banker to the Debtor nunc pro tunc to the Petition Date (as defined below). In support of the Application, the Debtor refers to the Declaration of Matthew R. Niemann In Support of the Debtor's Application for Authority to Employ and Retain Houlihan Lokey Capital, Inc. as Investment Banker for the Debtor and Debtor in Possession (the "Niemann Declaration"), attached hereto as Exhibit "D". In further support of the Application, the Debtor respectfully represents:

---

[1]      The last four digits of iGPS Company LLC's federal tax identification number are 6297. The location of iGPS Company LLC's corporate headquarters and the service address is 225 E. Robinson Street, Suite 200, Orlando, Florida.

## Background

1.      On June 4, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      As of the date hereof, no creditors' committee has been appointed in this case by the Office of the United States Trustee. No trustee or examiner has been requested or appointed in the Debtor's chapter 11 case.

3.      Additional background facts on the Debtor, including an overview of the Debtor's business, information on the Debtor's corporate structure, information on the Debtor's debt structure and information on the events leading up to the Debtor's bankruptcy case is contained in the Declaration of Walter Myers in Support of First Day Motions and Applications [Docket No. 12] (the "Myers Declaration").

## Jurisdiction

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

5.      By this Application, the Debtor respectfully requests entry of an order (i) authorizing the employment and retention of Houlihan as investment banker to the Debtor during the chapter 11 case nunc pro tunc to the Petition Date, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1 in accordance with the terms and conditions of the engagement letter between the Debtor and Houlihan dated as of December 19, 2012, a copy of which is attached hereto as Exhibit "A" (the "Engagement

2

Letter"), the Engagement Agreement Addendum dated June 2, 2013, a copy of which is attached

hereto as Exhibit "B-1" (the "Addendum") and the Acknowledgement, Agreement and Release

dated June 3, 2013, a copy of which is attached hereto as Exhibit "B-2" (the "Acknowledgment"

and, together with the Engagement Letter and the Addendum, the "Engagement Letters") and (ii)

waiving certain of the information requirements of Rule 2016-2 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), pursuant to Local Rule 2016-2(h).

## Basis For Relief

6.     The Debtor has selected Houlihan as its investment banker based upon

(i) Houlihan's extensive experience in matters involving complex financial restructurings and

distressed M&A transactions and (ii) Houlihan's excellent reputation for the services it has

rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

7.     Houlihan is a nationally-recognized investment banking and financial

advisory firm, with fourteen offices worldwide and more than 800 professionals. Houlihan's

Financial Restructuring Group, which has more than 165 professionals, is one of the leading

advisors and investment bankers to unsecured and secured creditors, debtors, acquirers, and other

parties in interest involved in financially-troubled companies both in and outside of bankruptcy.

Houlihan has been, and is, involved in some of the largest restructuring cases in the United

States, including representing official committees in Lehman Brothers Holdings Inc., Arcapita

Bank B.S.C(c)., Enron Corp., WorldCom, Inc., Delta Air Lines, Inc., General Growth Properties,

Capmark, and representing debtors in Mark IV Industries, Buffets Holdings, Inc., Bally Total

Fitness Holding Corp., XO Communications, Inc., Six Flags, Inc., Granite Broadcasting Corp.,

and MS Resorts.

3

8. The resources, capabilities, and experience of Houlihan in advising the Debtor are crucial to the Debtor's successful restructuring. An experienced investment banker such as Houlihan fulfills a critical need that complements the services offered by the Debtor's other restructuring professionals. Broadly speaking, Houlihan will concentrate its efforts assisting the Debtor to implement a sale of substantially all of its assets in the chapter 11 case. For these reasons, the Debtor requires the services of a capable and experienced investment banking firm such as Houlihan and the relief requested is necessary to avoid immediate and irreparable harm to the Debtor's estate.

9. Prior to retaining Houlihan, the Debtor's senior management considered other investment banking firms and evaluated each firm based on a number of considerations, including, but not limited to, the overall experience of each firm and their professionals; the capabilities of each firm to provide investment banking advice in chapter 11 cases; and the efficiency and cost-effectiveness of each firm. After due consideration, the Debtor concluded that Houlihan was best qualified to provide investment banking services to the Debtor at a reasonable level of compensation.

10. Prior to the Petition Date, in December 2012, the Debtor engaged Houlihan to provide general investment banking advice in connection with the Debtor's attempts to effect a transaction to maximize the value of the business, including the pursuit of a sale of iGPS. In providing prepetition services to the Debtor in connection with these matters, Houlihan's professionals have worked closely with the Debtor's management and other professionals and have become well acquainted with the Debtor's operations, debt structure, creditors, businesses, operations and related matters. Accordingly, Houlihan has developed

4

significant relevant experience and expertise regarding the Debtor that will assist it in providing effective and efficient services in this case.

11.     The compensation arrangement provided for in the Engagement Letters is consistent with, and comparable to, arrangements entered into by Houlihan and other investment banking firms in connection with rendering similar services to clients such as the Debtor.  The Debtor submits that the retention of an investment banker, such as Houlihan, is justifiable and necessary to assist and further enable the Debtor to execute faithfully its duties as debtor and debtor in possession.  The Debtor firmly believes that Houlihan is qualified to represent its interests and the interests of the estate.

A.     **Disinterestedness**

12.     To the best of the Debtor's knowledge, based upon the Niemann Declaration and with respect to the services described herein and in the Engagement Letters, neither Houlihan nor any of its officers or employees (i) holds or represents any interest adverse to the Debtor, the Debtor's creditors or any other party in interest or their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee and (ii) does not hold or represent an interest adverse to the Debtor's estate.

13.     To the best of the Debtor's knowledge, Houlihan is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b).

14.     The Debtor has been advised that, other than with its own partners and employees, Houlihan has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with this chapter 11 case.

5

15.    If Houlihan discovers any information that is contrary to or pertinent to the statements made in the Niemann Declaration, Houlihan will promptly disclose such information to this Court, creditors of the Debtor and the United States Trustee.  Within 90 days prior to the Petition Date, Houlihan has been paid by the Debtor a total of $450,000 in fees, and has reimbursed for $50,843.08 in expenses.  Additionally, in accordance with the Acknowledgment, Houlihan was paid $750,000 from the Senior Lenders (as the term is used in the Engagement Letters) under the Debtor's credit facility in conjunction with the sale of the Senior Lenders' claims.  (Pursuant to a First Amendment to Forbearance Agreement, dated December 26, 2012, the Senior Lenders agreed to carve out for the payment of certain fees and expenses under the Engagement Letters.)  The Debtor does not owe Houlihan any amount for any services performed or expenses incurred prior to the Petition Date.  Accordingly, Houlihan is not a prepetition creditor of the Debtor.

**B.  Scope of Services**[2]

16.    Houlihan's employment is appropriate and necessary to enable the Debtor to execute faithfully its duties as debtor and debtor in possession.  Subject to the Court's approval, as more fully described in the Engagement Letters, it is proposed that Houlihan may, as appropriate, and to the extent requested and/or directed by the Debtor's management:

- assist the Debtor in the development and distribution of selected information, documents and other materials, including, if appropriate, advising the Debtor in the preparation of a confidential memorandum;

- assist the Debtor in evaluating indications of interest and proposals regarding any transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners;

---

[2]    Capitalized terms used in this summary but not otherwise defined herein shall have the meanings set forth in the Engagement Letters.  This summary is solely for the benefit of the Court and parties in interest.  To the extent that this summary and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

6

- assist the Debtor with the negotiation of any transaction(s), including participating in negotiations with creditors and other parties involved in any transaction(s);

- provide expert advice and testimony regarding financial matters related to any transaction, if necessary;

- attend meetings of the Company's Board of Managers, creditor groups, official constituencies and other interested parties, as the Debtor and Houlihan mutually agree; and

- provide such other financial advisory and investment banking services as may be agreed upon by Houlihan and the Debtor.

17.     The Debtor does not intend that the services described above, to be rendered by Houlihan, will be duplicative of the services performed by any other professional and the Debtor will work together with all of their professionals to minimize any duplication of effort as much as possible. The Debtor firmly believes that Houlihan will provide these necessary services in a cost-effective, efficient and timely manner.

### C. Terms of Retention

18.     The Debtor understands that Houlihan intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code.

19.     On December 19, 2012, the Debtor and Houlihan executed the Engagement Letter and agreed to the compensation structure set forth therein (the "Fee and Expense Structure"), a partial summary of which is provided below, in consideration for the services to be rendered by Houlihan in the chapter 11 case. Section 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328(a), therefore, permits

7

the Court to approve the Fee and Expense Structure set forth in the Engagement Letter in

connection with the Debtor's retention of Houlihan.

        20.    A summary of the Fee and Expense Structure[3] is as follows:

- Initial Fee: the Debtor shall pay Houlihan a nonrefundable cash fee of $75,000, which shall be earned upon Houlihan's receipt thereof in consideration of Houlihan accepting the engagement (the "Initial Fee");

- Monthly Fees: upon the first monthly anniversary of the Effective Date, and on every monthly anniversary of the Effective Date during the term of this Engagement Letter, the Debtor shall pay Houlihan in advance, without notice or invoice, a nonrefundable cash fee of $75,000 (the "Monthly Fee"); provided that, with respect to the Monthly Fee payable upon the sixth monthly anniversary of the Effective Date, 50% of such Monthly Fee shall be credited to the first Transaction Fee (as defined below) paid by the Debtor, provided that the Transaction Fee shall not be reduced below zero; and

- Transaction Fee(s): In addition to the other fees provided for in the Engagement Letter, the Debtor shall pay Houlihan the following transaction fee(s):

    a)  Restructuring/Sale Transaction Fee: Upon the earlier to occur of: (I) in the case of an out-of-court Restructuring Transaction or Sale Transaction, the closing of such Restructuring Transaction or Sale Transaction; and (II) in the case of an in-court Restructuring Transaction or Sale Transaction, the earlier of (x) the closing of a sale transaction or (y) the effective date of a confirmed plan under the Bankruptcy Code, Houlihan shall earn and be paid as a cost of such transaction, a cash fee equal to the greater of (A) $750,000 and (B) 3.0% of Aggregate Gross Consideration ("AGC") up to $100 million; 4.0% of that portion of AGC that is greater than $100 million but less than or equal to $110 million; 5.0% of that portion of AGC that is greater than $110 million but less than or equal to $120 million; and 6.0% of that portion of AGC that is greater than $120 million.

    b)  Financing Transaction Fee: Upon the closing of each Financing Transaction, Houlihan shall earn, and the Debtor shall thereupon pay immediately and directly from the gross proceeds of such Financing Transaction, as a cost of such Financing Transaction, a cash fee equal to the sum of: (I) 2.0% of the gross proceeds of any indebtedness raised or committed that is senior to other indebtedness of the Debtor, secured by a first priority lien and unsubordinated, with respect to both lien priority and payment, to any other obligations of the Debtor (including debtor in possession financing, but excluding any debtor in

---

[3]    To the extent there is any inconsistency in connection with the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall control.  The Engagement Letter contains additional provisions for compensation, that are not set forth in this Application.

possession financing provided by the Debtor's existing Senior Lenders), shareholders, or an Acquirer or an entity that has expressed an interest in becoming an Acquirer); (II) 2.5% of the gross proceeds of any indebtedness raised or committed that is secured by a lien (other than a first lien), is unsecured and/or is subordinated; and (III) 6.0% of the gross proceeds of all equity or equity-linked securities (including, without limitation, convertible securities and preferred stock) placed or committed.

• Expenses: Whether any Transaction is consummated, the Debtor shall, upon Houlihan's request, reimburse Houlihan for its reasonable out-of-pocket expenses incurred from time to time in connection with its services under the Engagement Letter. Houlihan bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors, and postage, telecommunication and duplicating expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan.

Houlihan shall, in addition, be reimbursed by the Debtor for the fees and expenses of Houlihan's legal counsel incurred in connection with the negotiation and performance of the Engagement Letter and the matters contemplated thereby.

21.     On June 2, 3013, to accommodate the Debtor's liquidity constraints,

Houlihan agreed to certain modifications to the Engagement Letter, as reflected in the

Addendum executed by Houlihan and the Debtor. A summary of the material terms of the

Addendum[4] is as follows:

• Monthly Fees: Houlihan shall accept $75,000 as a non-refundable Monthly Fee payable on June 3, 2013 to cover the Monthly Fee installments due June 19, 2013 and Houlihan shall waive the Monthly Fee installment due July 19, 2013 (provided there shall not be a 50% credit associated with the June 3rd payment), and commencing on August 19, 2013, the regular Monthly Fee installments shall resume and be subject to 50% credits as provided in the Engagement Letter.

• Financing Transaction Fee: Houlihan shall accept a Financing Fee of $125,000 in conjunction with the Financing Transaction contemplated with Crystal Capital, provided that any other Financing Transaction shall be paid in accordance with the

---

[4]      To the extent there is any inconsistency in connection with the summary of the terms of the Addendum set forth in this Application and the terms set forth in the Addendum, the terms of the Addendum shall control.

9

Engagement Letter, provided that there shall not be any credit for the payment of the
Financing Transaction Fee against any subsequent Transaction Fees.

- Transfer of Successful Lender Bidding Credit: Houlihan shall afford the 50% credit
set forth in paragraph 3(iii)(c) of the Engagement Letter to iGPS Logistics LLC, as
the purchaser of the claims under the Senior Loan Agreement, up to a $50 million
credit bid, so that no additional fee will be owed in conjunction with such credit bid
(the calculated fee would be $750,000, i.e., $1.5 million times 50%) and Houlihan
will give the Company credit for the $750,000 paid by the existing lenders in
conjunction with the note sale toward any future Sale Transaction Fees or
Restructuring Transaction Fees.

22.    The Debtor believes that the Fee and Expense Structure set forth in the

Engagement Letter and as modified by the Addendum and Acknowledgment includes reasonable

terms and conditions of employment and should be approved under section 328(a) of the

Bankruptcy Code. The Fee and Expense Structure appropriately reflects the nature of the

services to be provided by Houlihan and the fee structures typically utilized by leading

investment bankers of similar stature to Houlihan for comparable engagements, both in and out

of court. The Fee and Expense Structure is consistent with Houlihan's normal and customary

billing practices for cases of this size and complexity that require the level of scope and services

outlined. In particular, the Debtor believes that the Fee and Expense Structure creates a proper

balance between fixed, monthly fees and contingency fees. Similar fixed and contingency fee

arrangements have been approved and implemented in other large chapter 11 cases in this

district. See, e.g., In re Harry & David Holdings, Inc., No. 11-10884 (MFW) (Bankr. D. Del.

April 27, 2011) (authorizing the retention of Rothschild Inc. as financial advisor and investment

banker for debtors under section 327(a) and 328(a) of the Bankruptcy Code); In re Oakwood

Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (authorizing retention of

Miller Buckfire Lewis & Co., LLC and Dresdner Kleinwort Wasserstein, Inc., as investment

banker and financial advisor for debtors under section 327(a) and 328(a) of the Bankruptcy

10

Code); In re Burlington Indus., Inc., No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003

(authorizing retention of Miller Buckfire Lewis & Co., LLC and Dresdner Kleinwort

Wasserstein, Inc., as investment banker for debtors under section 327(a) and 328(a) of the

Bankruptcy Code); In re Kaiser Aluminum Corp., et al., No. 02-10429 (JKF) (Bankr. D. Del.

March 19, 2002) (authorizing retention of Lazard Freres & Co. LLC as financial advisor and

investment banker for debtors and subjecting compensation to same standard of review).

        23.      The Debtor believes that the Fee and Expense Structure includes

reasonable terms and conditions of employment in light of (a) industry practice, (b) market rates

charged for comparable services both in and out of the chapter 11 context, (c) Houlihan's

substantial experience with respect to investment banking services, and (d) the nature and scope

of work to be performed by Houlihan in the chapter 11 case. Moreover, consistent with its

ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee

arrangements are not hours-based, Houlihan does not maintain contemporaneous time records or

provide or conform to a schedule of hourly rates for its professionals. As Houlihan's

compensation is calculated and paid based on fixed Monthly and Transaction Fees bases,

Houlihan requests that it not be required to file time records in accordance with Local Rule 2016-

2 and the United States Trustee Guidelines.

        24.      The Debtor submits that the retention of Houlihan on the terms and

conditions set forth herein and in the Engagement Letters is in the best interests of the Debtor,

the Debtor's estate, creditors and all parties in interest.

**D.  Indemnification Provisions**

        25.      The Engagement Letters provide that the Debtor will indemnify,

reimburse, defend and provide contribution to Houlihan and its affiliates and its and their

MIAMI 969697

respective directors, officers, members, employees, agents and controlling persons under certain circumstances. Such terms of the Engagement Letters, as modified by the proposed form of order authorizing Houlihan's retention, reflect the qualifications and limits on such terms that are customary in this jurisdiction, and are in substantially the same form as terms that were approved by this Court in other cases. See, e.g., In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); In re Harry & David Holdings, Inc., No. 11-10884 (MFW) (Bankr. D. Del. April 27, 2011); In re J.L. French Auto. Castings, Inc., Case No. 06-10119 (MFW) (Bankr. D. Del. Mar. 3, 2006); In re Foamex Int'l Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Feb. 13, 2006); In re Exide Techs., Case No. 02-11125 (KJC) (Bankr. D. Del. Aug. 21, 2002). Accordingly, the Debtor and Houlihan believe that the terms of the Engagement Letters, as modified by the proposed order, are customary and reasonable for engagements of this type and should be approved in this case.

## Notice

26.    Notice of this Application has been provided to the Office of the United States Trustee for the District of Delaware, counsel to the Purchaser, counsel to the DIP Lender, the Debtor's 30 largest unsecured creditors (including counsel if known), and all parties requesting notices pursuant to Bankruptcy Rule 2002. The Debtor submits that no other or further notice need be provided.

27.    No previous application for the relief sought herein has been made to this or any other court.

12

WHEREFORE, the Debtor respectfully requests entry of an order, in substantially the form attached hereto as Exhibit "C", (i) approving the employment and retention of Houlihan as Investment Banker to the Debtor pursuant to section 327(a) and 328(a) of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules pursuant to the terms and conditions reflected in the Engagement Letters, (ii) approving the terms of Houlihan's employment, including Fee and Expense Structure, and (iii) granting the Debtor such other and further relief as the Court deems just and proper.

Dated:  June 10, 2013
       Orlando, Florida

Respectfully submitted,

iGPS Company LLC

By: _____
Name: Walter Myers
Title: Vice President of Finance

13