**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re ) | | Chapter 7 |
| ) | | |
| PALLET COMPANY LLC (f/k/a iGPS ) | | |
| COMPANY LLC), ) | | Case No. 13-11459(KG) |
| ) | | |
| Debtor. ) | | **Re: Dkt. Nos. 732, 756, & 763** |
| ) | | |

## **MEMORANDUM OPINION**

The Court is ruling on the Liquidation Trustee's (the "Trustee") Objection to the Proof of Claim Filed by Perkins Coie LLP (the "Objection"). Perkins Coie filed a proof of claim asserting a claim for $301,000 secured by a charging lien based on prepetition legal services. The Trustee objects to the claim, arguing that Perkins Coie lacks a perfected charging lien. For the following reasons, the Court will sustain the objection and reclassify the claim as unsecured.

On December 1, 2011, the Debtor retained Perkins Coie to pursue actions against certain parties for misappropriating and destroying more than 45,000 of the Debtor's pallets. Pursuant to the engagement letter, the Debtor retained Perkins Coie on an hourly basis rather than a contingency fee agreement. Perkins Coie filed two lawsuits on the Debtor's behalf: *iGPS Company, LLC v. Pallet World Inc.* in a Michigan State Court and *iGPS Company, LLC v. Southwest Forest Products, Inc.* in an Arizona State Court (collectively, the "Actions"). In April 2013, while the Actions remained pending, Perkins Coie filed notices of lien, asserting a charging lien in Michigan and Arizona based on the Actions (the "Notices of Lien").

On June 4, 2013, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. On its Schedules of Assets and Liabilities and its Statement of Financial Affairs, the Debtor listed the Actions as contingent and unliquidated claims, pending as of the Petition Date. The Debtor listed Perkins Coie as a creditor holding a $286,941.56 unsecured, nonpriority claim.

On June 5, 2013, the Debtor filed a motion seeking to sell all of its assets, including the Actions, free and clear of liens (the "Sale Motion"). The Debtor also moved to employ Perkins Coie as an ordinary course professional to continue to provide legal services relating to the Actions. Despite receiving notice of Sale Motion, Perkins Coie did not file an objection or otherwise respond the Sale Motion. Perkins Coie did file a declaration of ordinary course professional, disclosing that the Debtor owed Perkins Coie approximately $319,200.37 for prepetition services "the payment of which is subject to limitations contained in the Bankruptcy Code." (Ordinary Course Declaration at ¶ 7. Dkt. No. 243 .) Perkins Coie further disclosed that its only interest adverse to the Debtors was its claim for attorney's liens relating to the Actions. (*Id.* at ¶ 9.) During the course of the bankruptcy case, the Debtor paid Perkins Coie $31,915.44 for fees relating to "legal advice regarding environmental and legislation matters; management of pallet theft litigation." (Notice of First Quarterly Statement of Retained Professionals Used in the Ordinary Course of Business at Ex. A, Dkt. No. 513.)

On July 29, 2013, the Court approved the sale of substantially all of the Debtor's assets (the "Sale") to iGPS Logistics LLC (the "Purchaser"). The approved Asset Purchase Agreement specifically provides that the Debtor would sell, free and clear of

any encumbrances, "all rights, claims actions and causes of action of Seller against any Third Party (including, without limitation, ... all claims and causes of action against pallet recyclers...)" and excluding any specifically excluded assets. (Sale Order at Ex. 1, ¶ 2.1(p) Dkt. No. 416.)[1] The Sale Order provided that all liens "shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect as presently exists." (Dkt. No. 416 at ¶ 6.)

On October 1, 2013, the Debtor filed and served its Second Amended Disclosure Statement (the "Disclosure Statement") and Second Amended Chapter 11 Plan. The Disclosure Statement indicated that no non-lender secured claims existed. (Disclosure Statement at ¶ VIII. 1(b), Dkt. No. 560.) ("At present, it is believed that no such Claims exist.") Furthermore, the Disclosure Statement listed the Actions as pending litigation. (*Id.* at ¶ VII. D.) Perkins Coie did not directly object or otherwise respond to Disclosure Statement, but did file a response to the Chapter 11 Plan. (Dkt. No. 658.) In the response, Perkins Coie noted the Disclosure Statement's assertion that no non-lender secured claims existed and reserved all of its rights, claims and remedies.

The Committee responded to Perkins Coie's response, arguing that the response was a delayed objection to the Sale and Perkins Coie did not have a valid charging lien because the litigation was pending.[2] On October 10, 2013, Perkins Coie filed its Proof of Claim asserting a $301,100 secured claim based on attorney's liens and attached the Notices of Lien.

---

[1] The definition of Excluded Assets does not include the Actions. (Sale Order at Ex. 1, ¶ 2.2 Dkt. No. 416.)

[2] The Debtor joined in the Committee's response. (Dkt. No. 665.)

3

Following a confirmation hearing held on November 14, 2013, the Court confirmed the Debtor's Chapter 11 Plan. The Plan provided for the creation of a liquidation trust to distribute the Sale proceeds.

On November 27, 2013, the Chapter 11 Plan went effective and the Trustee succeeded to all of the Debtor's rights and powers to administer the Liquidation Trust and its assets. On December 13, 2013, the Trustee filed an objection to Perkins Coie's Proof of Claim arguing that there is no basis for asserting that the claim is secured and requests that the Court reclassify the claim as an unsecured nonpriority claim. The Trustee asserts that Perkins Coie cannot establish that it holds an enforceable attorney's charging lien because it has not obtained a judgment in favor of the Debtor. Perkins Coie argues that because the Debtor liquidated its interest in the litigation, Perkins Coie is entitled to a charging lien on a portion of the proceeds of the Sale generated by the sale of the Actions. On January 15, 2014, the Court held a hearing on the Objection, at which Perkins Coie disclosed that it was continuing to litigate the Actions on behalf of the Purchaser.

## **JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested are Sections 105 and 502 of the Bankruptcy Code, and Bankruptcy Rules 3001 and 3007.

## DISCUSSION

A properly filed proof of claim is *prima facie* valid. *In re Allegheny Int'l, Inc.*, 954, F.2d 167, 173 (3d Cir. 1992). A proof of claim based on a security interest in the debtor's property must include evidence that such security interest was perfected. Fed. R. Bankr. P. 3001(d). A timely filed proof of claim is deemed allowed unless a party of interest objects. 11 U.S.C. § 502(a). If an objector sufficiently discredits the claim's legal sufficiency, the burden shifts to the claimant to prove the validity of the claim. *Allegheny Int'l*, 954 F.2d at 173-74.

Under both Arizona and Michigan law, a charging lien "creates a lien on a judgment, settlement or other money recovered as a result of the attorney's services" and "are not recognized by statute but exist in the common law." *Souden v. Souden*, --- N.W. 2d ---, 2013 WL 6670572 (Mich. App. Dec. 17, 2013). *See also Alioto v. Official Creditor Comm. (Matter of SW Rest. Sys., Inc.)*, 607 F.2d 1243, 1247 (9th Cir. 1979) ("A charging lien attaches to the particular fund or other property created or secured through the attorney's efforts."); *George v. Sandor M Gelman, PC*, 201 Mich App. 474, 476, 506 N.W. 2d 583 (1993) (A charging lien "is an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit."); *Skarecky & Horenstein, P.A. v. 3605 N. 36th St. Co.*, 170 Ariz. 424, 428, 825 P.2d 949, 953 (App. 1991) ("A charging lien is an attorney's lien that attaches after a judgment is obtained in the litigation.").

In principle, a charging lien ensures that clients do not receive an award from litigation, as a result of an attorney's work without paying an attorney for the work.

*Langerman Law Offices, P.A. v. Glen Eagles at Princess Resort, LLC*, 220 Ariz. 252, 254, 204 P.3d 1101, 1103 (Ariz. App. 2009). Under Michigan law, charging liens arise from the court's inherent power to oversee the attorney-client relationship, but such liens are "subject to the control of the court for the protection of the client and third parties as well." *Kysor Indus. Corp. v. DM Liquidating Co.*, 11 Mich. App. 438, 446, 161 N.W. 2d 452, 455-456 (1988).

The Arizona Supreme Court has held that a charging lien "arises only when the parties look to the fund obtained from the attorney's efforts for payment of the attorney's fees." *Nat'l Sales & Serv. Co., Inc. v. Superior Court of Maricopa Cty Ariz.*, 136 Ariz 544, 544, 667 P.2d 738, 738 (1983) (citing *Linder v. Lewis, Roca, Scoville & Beauchamp*, 85 Ariz. 118, 333 P.2d 286 (1958)). Similarly, Michigan law provides that a charging lien enables an attorney to "have the fees and costs due to him for services in a suit secured to him out of the judgment or recovery in *that particular suit*." *Kysor Indus.*, 11 Mich. App. at 444, 161 N.W.2d at 455(emphasis added) (quoting 7 C.J.S. Attorney and Client § 211). Thus, where there is no judgment, there is no charging lien. *Langerman Law Offices,* 220 Ariz. at 254, 204 P.3d at 1103 (holding that an attorney had no charging lien because there was no judgment in favor of his client to which the lien could attach).

Under Michigan law, a charging lien automatically attaches to a money judgment recovered through the attorney's services. *George*, 201 Mich App. at 477, 506 N.W.2d at 585. Under Arizona law, "a charging lien is not perfected until notice has been given to the obligor against whom it is asserted, unless such person has knowledge of the claim, or

6

has notice of facts sufficient to put a prudent person upon inquiry." *Millsap v. Sparks*, 21 Ariz. 317, 322, 188 P. 135, 136 (1920)

Here, Perkins Coie argues that because the sale of the Actions generated a portion of the Sale, its charging lien attaches to that portion of the Sale proceeds as money recovered. Case law explicitly provides that a charging lien attaches after a judgment[3] in the particular case that the attorney asserting the charging lien litigated, not a related case. *Kysor Indus.*, 11 Mich. App. at 444, 161 N.W.2d at 455; *Nat'l Sales*, 136 Ariz. at 544, 667 P.2d at 738. Furthermore, the Sale Order provides no judgment relating to the Actions; it merely removes the Debtor's interest in the Actions. Perkins Coie continues to represent the Purchaser in the Actions. This representation may result in a favorable final judgment. Consequently, no judgment existed at the time of the Sale. Therefore, Perkins Coie could not have an enforceable charging lien at the time of the Sale.

The Sale Order explicitly provides that liens attach to the Sale proceeds to the extent of their value and validity at the time of the Sale. (Dkt. No. 416 at ¶ 6.) Perkins Coie did not have a valid charging lien at the time of the Sale and therefore does not have a charging lien that attaches to the Sale Proceeds. For that reason, Perkins Coie cannot sustain the burden of proving a secured claim.

---

3  State law also indicates that not only must the judgment be final, it must also be favorable to the client. However, the Court need not address this further requirement as Perkins Coie continues to litigate the Actions on behalf of the Purchaser.

**CONCLUSION**

Perkins Coie's representation of Debtors did not result in a judgment in the Actions prior to the Sale. As a result, there is no judgment to which the asserted charging liens can attach. Perkins Coie accordingly cannot establish that it holds a secured claim. Therefore, the Court will sustain the Objection and reclassify Perkins Coie's claim as a nonpriority general unsecured claim. The Court will issue an order.

Dated: February 4, 2014

KEVIN GROSS, U.S.B.J.